**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **BOND PHARMACY, INC., d/b/a AIS HEALTHCARE,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:22-cv-01343-CMH-IDD** |
| **ANTHEM HEALTH PLANS OF VIRGINIA, INC., d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD,** | |
| **Defendant.** | |

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT ANTHEM HEALTH PLANS OF VIRGINIA, INC. D/B/A ANTHEM BLUE**
**CROSS AND BLUE SHIELD'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF ALLEGATIONS ..................................................................... 2

ARGUMENT ............................................................................................................ 6

I.      STANDARD OF REVIEW FOR MOTION TO DISMISS. ............................................ 6

II.     PLAINTIFF'S COMPLAINT OMITS THE NECESSARY HEALTH BENEFITS CLAIMS LIST AND THUS FAILS TO ALLEGE SUFFICIENT FACTS TO SATISFY THE PLEADING REQUIREMENTS OF RULES 8 AND 10(B). .................. 7

III.    PLAINTIFF'S CONTRACT CLAIMS FAIL TO THE EXTENT THEY ARE BASED ON ANTHEM'S REFUSAL TO PAY CLAIMS WHEN THE DRUGS AND SERVICES WERE PROVIDED OUTSIDE THE MEMBER'S HOME. ............. 12

       A.     Legal Standard. ................................................................................. 12

       B.     The Agreement Expressly Excludes Drug Payments for Drugs Shipped Outside of the Home. ............................................................. 12

       C.     The Agreement Expressly Excludes Per Diem Payments When the Pump Is Refilled or Administered Outside of the Home. ............................... 13

       D.     Anthem Is Allowed to Recoup And/Or Offset Payments Under the Agreement. ...................................................................................... 14

       E.     Anthem's Payment Obligations Are Determined by the Agreement and the Amendment, Not the NHIA Standards Relied on by Plaintiff. ............................ 15

IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR DECLARATORY JUDGMENT. ............................................................................................................ 17

V.     PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT. ............... 18

CONCLUSION ...................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Fin. Guar. Corp. v. City of Buena Vista*,
 917 F.3d 206 (4th Cir. 2019) ................................................7

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
 821 F.3d 352 (2d Cir. 2016)................................................10

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................6, 7

*AvePoint, Inc. v. Knickerbocker*,
 475 F. Supp. 3d 483 (E.D. Va. 2020) ................................................17

*Beiro v. CFA Inst.*,
 No. 3:18cv88, 2019 U.S. Dist. LEXIS 1807 (W.D. Va. Feb. 4, 2019)................13, 14

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................6, 7

*Brown v. Sikora & Assocs., Inc.*,
 311 F. App'x 568 (4th Cir. 2008) ................................................10

*Butts v. Weltman, Weinberg & Reis Co.*,
 No. 1:13cvl 026, 2013 U.S. Dist. LEXIS 162483 (E.D. Va. Nov. 14, 2013) ................18

*Cagle v. Bruner*,
 112 F.3d 1510 (11th Cir. 1997) ................................................10

*Carolina Conduit Sys. v. MasTec N. Am., Inc.*,
 No. 3:11CV133-HEH, 2011 U.S. Dist. LEXIS 122578 (E.D. Va. Oct 24, 2011) ................................................18

*Centennial Life Ins. Co. v. Poston*,
 88 F.3d 255 (4th Cir. 1996) ................................................17

*Chertoff Capital, L.L.C. v. Braes Capital, LLC*,
 No. 1:19cv631, 2019 U.S. Dist. LEXIS 231192 (E.D. Va. Oct. 31, 2019) ................12

*City of Hope Nat. Med. Ctr. v. HealthPlus, Inc.*,
 156 F.3d 223 (1st Cir. 1998)................................................10

*Clatterbuck v. City of Charlottesville*,
 708 F.3d 549 (4th Cir. 2013) ................................................6

*Cortez-Melton v. Capital One Fin. Corp.*,
    No. 3:19cv127, 2021 U.S. Dist. LEXIS 36676 (E.D. Va. Feb. 26, 2021) ...............................18

*Cromwell v. Equicor–Equitable HCA Corp.*,
    944 F.2d 1272 (6th Cir. 1991) ...............................................................................................10

*Doctor's Hosp. of Slidell, LLC v. United HealthCare Ins. Co.*,
    No. 10-3862, 2011 U.S. Dist. LEXIS 163445 (E.D. La. Apr. 26, 2011) ..................................8

*Filak v. George*,
    267 Va. 612 (2004) ................................................................................................................12

*Infectious Disease Doctors, P.A. v. BlueCross BlueShield of Tex.*,
    No. 3:13-CV-2920-L, 2014 U.S. Dist. LEXIS 120728, 2014 WL 4262164
    (N.D. Tex. Aug. 29, 2014) ......................................................................................................8

*Kennedy v. Conn. Gen. Life Ins. Co.*,
    924 F.2d 698 (7th Cir. 1991) .................................................................................................10

*Link v. Weizenbaum*,
    229 Va. 201 (1985) ................................................................................................................12

*Lippincott v. PNC Bank, N.A.*,
    No. ELH-12-463, 2012 U.S. Dist. LEXIS 71825 (D. Md. May 22, 2012) ..............................17

*Marathon Res. Mgmt. Grp., LLC v. C. Cornell, Inc.*,
    No. 3:19cv89, 2020 U.S. Dist. LEXIS 109892 (E.D. Va. June 23, 2020) ........................13, 14

*Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*,
    576 F.3d 172 (4th Cir. 2009) ..................................................................................................3

*McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*,
    857 F.3d 141 (2d Cir. 2017) ..................................................................................................11

*Metra Indus. v. Rivanna Water & Sewer Auth.*,
    No. 3:12CV00049, 2014 U.S. Dist. LEXIS 21568 (W.D. Va. Feb. 19, 2014) .......................17

*Misic v. Building Serv. Employees Health & Welfare Trust*,
    789 F.2d 1374 (9th Cir. 1986) ...............................................................................................10

*N. Shore Med. Ctr. v. Cigna Health & Life Ins. Co.*,
    No. 1:20-cv-24914-KMM, 2021 U.S. Dist. LEXIS 88901 (S.D. Fla. May 10,
    2021) ......................................................................................................................................8

*Pa. Chiropractic Ass'n v. BCBS Ass'n*,
    No. 09-C-5619, 2011 WL 219828 (N.D. Ill. Jan. 21, 2011) ....................................................9

*Powell v. Chesapeake & Potomac Tel. Co. of Va.*,
   780 F.2d 419 (4th Cir. 1985) ...............................................................................10

*Prof'l Orthopaedic Assocs., PA v. 1199 Nat'l Benefit Fund*,
   No. 16-CV-4838 (KBF), 2016 WL 6900686 (S.D.N.Y. Nov. 22, 2016), *aff'd*
   *sub nom. Prof'l Orthopaedic Assocs., PA v. 1199SEIU Nat'l Benefit Fund*,
   697 F. App'x 39 (2d Cir. 2017) ............................................................................10

*Ransome v. O'Bier*,
   No. 3:16cv1002, 2017 U.S. Dist. LEXIS 60527 (E.D. Va. Apr. 20, 2017).....................13, 14

*Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc. et. al.*,
   No. 10-81589-CIV, 2011 WL 2134534 (S.D. Fla. May 27, 2011)...........................................8

*Scripps Health v. Food Employers & Bakery & Confectionery Workers Ben. Fund*
   *of S. Cal.*,
   No. 10-CV-2484-WQH-RBB, 2012 WL 1430955 (S.D. Cal. Apr. 24, 2012) .........................9

*Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*,
   6 F. Supp. 3d 275 (E.D.N.Y. 2014) ........................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)................................................................................................3

*Torchlight Loan Servs., LLC v. Column Fin., Inc.*,
   No. 11 Civ. 7426, 2012 U.S. Dist. LEXIS 105895 (S.D.N.Y. July 25, 2012).........................17

*Walters v. McMahen*,
   684 F.3d 435 (4th Cir. 2012) ............................................................................6, 7

*Willis N. Am. Inc. v. Walters*,
   No. 3:10cv462, 2011 U.S. Dist. LEXIS 34261 (E.D. Va. Mar. 30, 2011) .............................18

*Wilton v Seven Falls*,
   515 U.S. 277 (1995)................................................................................................17

**Statutes**

Declaratory Judgment Act ...........................................................................................17

ERISA ....................................................................................................1, 8, 9, 10, 11

**Other Authorities**

Fed. R. Civ. P. 8..............................................................................................1, 7, 8, 11

Fed. R. Civ. P. 12(b)(6)...............................................................................................................6, 7

Fed. R. Civ. P. 10.....................................................................................................................1, 7, 8

Local Rule 5(C)...............................................................................................................................3

NHIA, National Coding Standard for Home Infusion Claims under HIPAA
    (2021), https://nhia.org/wp-content/uploads/2021/12/NHIA_Code_Std_2022-
    FINAL.pdf ...............................................................................................................................15

Defendant Anthem Health Plans of Virginia, Inc. d/b/a Anthem, Blue Cross and Blue Shield ("Anthem"), by counsel, submit this Memorandum of Law in support of Anthem's Motion to Dismiss the Complaint of Plaintiff Bond Pharmacy, Inc. d/b/a AIS Healthcare ("Bond Pharmacy" or "Plaintiff"). For the reasons set forth herein, the Court should dismiss the Complaint in its entirety, pursuant to Federal Rules of Civil Procedure ("FRCP") 8(a), 10, and 12(b)(6).

## PRELIMINARY STATEMENT

As alleged in the Complaint, Plaintiff Bond Pharmacy provides home infusion therapy services, which generally relate to the preparation and provision of drugs to be used in intrathecal pumps surgically implanted in a patient. In 2019, Anthem contracted with Bond Pharmacy to provide certain *in-home* infusion therapy services to Anthem patients (or members). Indeed, the parties' contract explicitly states that Bond Pharmacy is not entitled to any payment for services – or even permitted to provide services – outside of a member's home.

Plaintiff asserts that Anthem has failed to pay – or has underpaid – amounts due under the contract. While the Complaint goes into great detail on the nature of the Plaintiff's business and other collateral matters, it fails to identify any of the allegedly unpaid (or underpaid) claims which gave rise to the present action. Said differently, the Complaint *nowhere lists or otherwise adequately describes the specific claims* it alleges that Anthem has not properly paid under the terms of the contract. As other courts have held, a medical service provider's failure to include a list of the claims at issue violates the pleading requirements of FRCP 8 and 10. Likewise, without the claims list, Anthem cannot assess Plaintiff's causes of action, including whether, based on the specific claims at issue, Plaintiff's causes of action (i) are preempted by ERISA; (ii) may be brought by Plaintiff rather than the member under ERISA; (iii) are time-barred under the contract;

or (iv) are premature because Plaintiff has not exhausted the appeals process for such claims under the terms of the contract. For these reasons alone, the Complaint should be dismissed.

Further, Bond Pharmacy asserts that Anthem has both breached and anticipatorily breached the parties' contract. While those causes are based in part on allegations that will be proven untrue, the claims also are predicated on Bond Pharmacy's billing of Anthem for services it provided *outside of the Anthem member's home*. Bond Pharmacy contends that Anthem must pay for drugs that Bond Pharmacy delivers to physicians' offices, and that Anthem must pay per diem charges even if the member's pump is filled (or refilled) outside of the member's home. Based on the plain, unambiguous language of the contract, however, Bond Pharmacy is not entitled to drug payments if it delivers the drug to any location other than the member's home. Likewise, the plain language of the contract excludes payment for per diem charges if the member's pump is filled (or refilled) anywhere other than the member's home. Therefore, that portion of Bond Pharmacy's contract claims fail as a matter of law because they conflict with the plain language of the contract.

Additionally, Plaintiff's declaratory judgment claim fails as a matter of law because it seeks only to adjudicate Plaintiff's breach of contract claim. And Plaintiff's unjust enrichment claim fails as a matter of law because, as alleged by Plaintiff, there is a valid, enforceable contract between the parties, which prevents Plaintiff from seeking relief under a quasi-contractual theory. Plaintiff's Complaint should be dismissed.

### STATEMENT OF ALLEGATIONS

Plaintiff Bond Pharmacy is a national pharmacy which provides specialized home infusion therapy services. *Id*. ¶ 4. These home infusion services consist of providing patients with care through surgically implanted intrathecal pumps which dispense medication daily. *Id*. ¶¶ 4-5. So

long as Plaintiff has appropriately prepared the intrathecal pump, Plaintiff claims that a patient can receive infusions without a refill for up to 180 days. *Id.* ¶ 46.

Anthem contracted with Bond Pharmacy to participate in its network as a home infusion therapy service provider pursuant to the Anthem Blue Cross and Blue Shield Provider Agreement with Advanced Infusion Solutions effective as of January 15, 2020 (the "Agreement"). *Id.* ¶ 57. A copy of the Agreement, as amended on November 1, 2020 to update the pricing chart, is attached hereto as **Exhibit A**.[1] The Agreement was again amended effective as of December 15, 2021 (the "Amendment"), more than a year prior to the present litigation. A copy of the Amendment is attached hereto as **Exhibit B**.[2]

As relevant here, the Agreement contains payment terms relating to (i) the specific drug provided by Plaintiff (the "Drug Payments") and (ii) "per diem" payments associated with the filling (or refilling) of the member's pump (the "Per Diem Payments").[3] As discussed herein, Anthem's payment obligations regarding both the Drug Payments and Per Diem Payments are dependent upon the ***location*** where the drugs were shipped and inserted into the pumps.

    ***Drug Payments.*** ███████████████████████████████

████████████████████████████████████████████████

---

[1] In ruling on a motion to dismiss, a court should also consider documents beyond the complaint including any "documents incorporated into the complaint by reference." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). As noted in Plaintiff's Complaint, ¶ 57 n.7, the Agreement contains a confidentiality provision limiting disclosure of the Agreement without Anthem's consent and is being filed under seal pursuant to Local Rule 5(C).

[2] The Amendment incorporates by reference the Amendment's confidentiality provision. As such, it too is being filed under seal pursuant to Local Rule 5(C).

[3] The Agreement also contains a payment schedule for nursing services provided by Plaintiff, but those services are not at issue in the Complaint.

███████████████████████████████████████████████████████ Exs.
A & B at Plan Compensation Schedule ("PCS"), § I. ████████████████████████
████████████████████████████████████████████████████████████████
███████████ Exs. A & B at Plan Compensation Schedule ("PCS"), § I (emphasis added).

Notably, the Complaint does not provide the specifics for any claim at issue and thus does state for any such claim the location to which Plaintiff shipped the drugs or at which Plaintiff filled the member's pump with the drugs. ████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████[4] Ex. A at PCS, § III. ████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████ Ex. B at PCS, § III ████████████████████████
████████████████████████████████████████████████████████
***Per Diem Payments***. ████████████████████████████████████████
██████████████████████████████████████████ Ex. A, PCS § III.
███████████████████████████████████████████████████ *Id.*

Plaintiff asserts that "Anthem alleged that the Agreement barred [Plaintiff] from billing the per diem where a patient's medication was shipped to a treating physician's office." Compl. ¶ 14. It further alleges that "the Agreement does not limit or condition per diem charges based on where the drug is dispensed." *Id.* ¶ 19.

---

[4] All claims administered in the Ambulatory Infusion Suite should have specific coding identifying the place of administration. It does not appear from the allegations that Plaintiff shipped any drugs, or filled any pumps, in an Ambulatory Infusion Suite, and therefore, this language does not appear to be at issue. That said, if Plaintiff were to provide a spreadsheet of the claims at issue, Anthem would be able to determine if any claims relate to the provision of services in an Ambulatory Infusion Suite.

In fact, ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Ex. A, PCS § III.

Moreover, ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

Ex. B, PCS § III (emphasis added).

*Recoupments*.  Plaintiff asserts that that the Agreement "prohibits Anthem from recouping any alleged overpayments for timely disputed claims . . . . The Agreement does not permit Anthem to recoup any overpayment if [Plaintiff] timely disputes any such overpayment."  Compl. ¶¶ 151-156.  This allegation, however, is squarely at odds with the plain language of the Agreement, which allows for Anthem to recoup and/or offset any overpayments, regardless of whether Bond Pharmacy has timely disputed those overpayments: ████████████████████████

████████████████████████████ Ex. A, § 2.7.  And ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

*Id.*

***Filing of the Present Action***.  Plaintiff filed its Complaint on November 23, 2022.  The Complaint alleges that Anthem has denied and recouped over \$525,000[5] relating to Per Diem and Drug Payments, although the Complaint does not contain any specifics (*e.g.*, patient identifying information, dates of service, etc.) regarding the claims which were reportedly underpaid.  Compl. ¶ 18.  The Complaint asserts four causes of action stemming from this purported underpayment and/or recoupment:  (i) Breach of Contract; (ii) Anticipatory Breach of Contract; (iii) Unjust Enrichment, and (iv) Declaratory Judgment.

## ARGUMENT

## I.    STANDARD OF REVIEW FOR MOTION TO DISMISS.

On a motion to dismiss for failure to state a claim under FRCP 12(b)(6), a court must first assume the truth of the factual allegations of the complaint and make all reasonable inferences in favor of the plaintiff, and then determine whether a Plaintiff has "failed to state a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir. 2012).  To state a facially plausible claim, a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  As the Supreme Court explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).

---

[5] The Complaint initially alleges that Anthem denied and recouped over \$525,000 in Drug and Per Diem payments ***combined***, Compl. ¶ 18, but later alleges that Anthem owes at least \$525,000 in ***both*** Drug and Per Diem Payments.  Compl. ¶¶ 93, 132.

In addition to the foregoing, under FRCP 8, a plaintiff must satisfy the requirement of providing "fair notice" of the nature of the claim, meaning the plaintiff must allege "facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." Accordingly, "[a] Rule 12(b)(6) motion should be granted where a plaintiff has failed to state a plausible claim for relief under Rule 8(a)." *Walters*, 684 F.3d at 439.

Here, the Complaint, which is comprised of bare legal conclusions, speculation, and unsupported factual allegations, cannot withstand a motion to dismiss under the standards set forth in *Twombly* and *Iqbal*. It should be dismissed.

## II. PLAINTIFF'S COMPLAINT OMITS THE NECESSARY HEALTH BENEFITS CLAIMS LIST AND THUS FAILS TO ALLEGE SUFFICIENT FACTS TO SATISFY THE PLEADING REQUIREMENTS OF RULES 8 AND 10(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FRCP 8(a). This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). Furthermore, FRCP 10(b) requires that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence…must be stated in a separate count or defense."

For defendants like Anthem to be able to fulsomely respond to claims like those asserted by Plaintiff, it is vital that the plaintiff provide, at minimum, the information to identify which specific healthcare claims were allegedly not paid or underpaid. Other courts have provided guidance on what this looks like in the present context, where the causes of action arise from many

different alleged non-payments or underpayments on a wide variety of healthcare claims.

> "To comply with the requirements of Rules 8 and 10, plaintiffs must identify, to the extent possible, the patient (for privacy reasons, not by patient name, but by patient identification number), the condition the patient suffered from that necessitated the procedure, the specific ERISA plan that covered the patient, the term of the plan that defendant allegedly violated, and the date the procedure was performed. This information would be best presented in a spreadsheet format, with all the information relating to a particular patient contained in a single row. The spreadsheet can be placed inside the complaint, or attached to the complaint and incorporated by reference."

*Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc. et. al.*, No. 10-81589-CIV, 2011 WL 2134534 at *3 (S.D. Fla. May 27, 2011).

When plaintiffs fail to provide this information, courts regularly dismiss the Complaint. *See N. Shore Med. Ctr. v. Cigna Health & Life Ins. Co.*, No. 1:20-cv-24914-KMM, 2021 U.S. Dist. LEXIS 88901, at *12 (S.D. Fla. May 10, 2021) ("Plaintiffs' failure to include basic and necessary facts, such as patient identification numbers, services performed, dates of service . . . makes it impossible for Defendant to assess the validity of Plaintiffs' claims"); *Infectious Disease Doctors, P.A. v. BlueCross BlueShield of Tex.*, No. 3:13-CV-2920-L, 2014 U.S. Dist. LEXIS 120728, 2014 WL 4262164, at *3 (N.D. Tex. Aug. 29, 2014) (dismissing a Complaint where "Plaintiff fails to provide BCBS Michigan with facts specifying: (1) the patients that are covered by BCBS Michigan plans; (2) the treatments these patients received; (3) the terms of the patients' insurance plan; and (4) the IDD doctors that performed services for these patients"); *Doctor's Hosp. of Slidell, LLC v. United HealthCare Ins. Co.*, No. 10-3862, 2011 U.S. Dist. LEXIS 163445, at *9-10 (E.D. La. Apr. 26, 2011) ("At the very least, Plaintiffs should provide in some form, whether as an attachment to an amended complaint or otherwise, enough basic factual information regarding each of the specific claims that Plaintiffs contend are actually at issue, including the identity of the patient and the nature and date of the services, the patient's ERISA plan, the amount billed and paid on those

claims.").

Here, the Complaint fails to identify any of the key information necessary to defend against the allegations therein, including, for example, (i) names of the members who allegedly received medical services from Bond Pharmacy, (ii) the dates of those medical services, (iii) the member identification numbers, (iv) dates of birth of the alleged patients, (v) Anthem's claim numbers or (vi) any other information necessary to locate the claims at issue.[6]

Without the foregoing factual information, Anthem cannot identify the specific health benefit claims at issue and cannot determine, much less adequately plead, the specific defenses that it expects to raise in response to Plaintiff's claims tied to those individual benefit claims.[7]

First, Anthem cannot determine whether Plaintiff's causes of action are preempted under ERISA because it cannot confirm which of the claims at issue are brought under ERISA-governed health benefits plans, including whether claims were denied under the terms of an ERISA-governed plan. *See, e.g., Scripps Health v. Food Employers & Bakery & Confectionery Workers Ben. Fund of S. Cal.*, No. 10-CV-2484-WQH-RBB, 2012 WL 1430955, at *8 (S.D. Cal. Apr. 24, 2012) (dismissing breach of contract claim as preempted by ERISA because the provider's agreement "requires the [provider] to look directly to the benefit plan governed by ERISA in order to determine whether Defendant [plan] is liable for the payment for services to the plan participant"); *Pa. Chiropractic Ass'n v. BCBS Ass'n*, No. 09-C-5619, 2011 WL 219828, at *1-2

---

[6] While public filing of this information would be prohibited by the confidentiality provision of the Agreement and other privacy laws, this information could have been filed under seal, as Anthem has done with regard to the Agreement and the Amendment.

[7] In February 2022, Plaintiff provided information relating to claims it asserted were not properly paid, but the information was "for settlement purposes only." The information was lacking and did not allow Anthem to identify or analyze the claims at issue. Plaintiff subsequently provided additional information, and Anthem has been analyzing and processing the claims over the past several months. Hence, even if the information that Plaintiff provided months ago was not for settlement purposes only, it is stale and out-of-date.

(N.D. Ill. Jan. 21, 2011) (dismissing breach of contract claim, despite existence of separate provider agreement, because the claim required a determination of whether services were covered services under the terms of ERISA plans); *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 291 (E.D.N.Y. 2014) (provider's breach of contract claim against plan administrator for services rendered to ERISA plan participant was preempted by ERISA); *Powell v. Chesapeake & Potomac Tel. Co. of Va.*, 780 F.2d 419, 421 (4th Cir. 1985) (noting the "unparalleled breadth of the [ERISA] preemption clause"). To the extent Plaintiff's claims relate to services rendered to members of ERISA plans, they must be dismissed as preempted.

Second, to the extent the claims at issue relate to services rendered to members of ERISA plans, Plaintiff has not pled adequate facts to establish constitutional or statutory standing. Only "participants," "beneficiaries," or "fiduciaries" may bring civil actions under ERISA. 29 U.S.C. § 1132(a); *Brown v. Sikora & Assocs., Inc.*, 311 F. App'x 568, 570 (4th Cir. 2008). As such, courts nationwide prohibit providers from bringing suit against an ERISA health benefits plan unless they first establish "the valid assignment of ERISA health and welfare benefits by participants and beneficiaries." *Brown*, 311 F. App'x at 570 (citing *City of Hope Nat. Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223 (1st Cir. 1998); *Cagle v. Bruner*, 112 F.3d 1510 (11th Cir. 1997); *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir. 1991); *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698 (7th Cir. 1991); and *Misic v. Building Serv. Employees Health & Welfare Trust*, 789 F.2d 1374 (9th Cir. 1986)); *see also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 361 (2d Cir. 2016). Even "simply asserting that claims under ERISA [ . . . ] have been assigned by the patients to [the plaintiff] is insufficient by itself to give [the plaintiff] a cause of action under the statute." *Prof'l Orthopaedic Assocs., PA v. 1199 Nat'l Benefit Fund*, No. 16-CV-4838 (KBF), 2016 WL 6900686, at *4 (S.D.N.Y. Nov. 22, 2016) (alterations in original), *aff'd sub*

*nom. Prof'l Orthopaedic Assocs., PA v. 1199SEIU Nat'l Benefit Fund*, 697 F. App'x 39 (2d Cir. 2017) (dismissing plaintiff's ERISA Section 502(a)(1)(B) claim as alleged assignment did not evidence that scope of assignment included member-patient's right to sue health benefits administrator in court proceeding). Moreover, if the plan contains an unambiguous anti-assignment provision, any attempted assignment is rendered "ineffective – a legal nullity." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147 (2d Cir. 2017). Here, Plaintiff neither alleges assignment nor alleges facts sufficient to show derivative standing under ERISA, and any claims under ERISA plans must be dismissed for this reason as well.

Third, without a claims list, Anthem cannot identify precisely which claims must be dismissed as time-barred under the Agreement. Plaintiff's relationship with Anthem dates back to 2019, and Plaintiff alleges that the purported payment issues began in 2020. ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████ Furthermore, █████████████

███████████████████████████████████████████████████████████

███████████ As such, any claim submitted by Plaintiff that Anthem allegedly failed to properly pay before November 23, 2021 is time-barred by the plain language of the Agreement and must be dismissed.

Fourth, without a claims list, Anthem cannot determine whether Plaintiff has exhausted the appeals process, as it is contractually required to do prior to filing suit, for each claim. *See* Section 2.9 ██████████████████████████████████████████████████████████

████████████

Accordingly, the Complaint should be dismissed for failure to meet the pleading

requirements of FRCP Rules 8 and 10.

## III. PLAINTIFF'S CONTRACT CLAIMS FAIL TO THE EXTENT THEY ARE BASED ON ANTHEM'S REFUSAL TO PAY CLAIMS WHEN THE DRUGS AND SERVICES WERE PROVIDED OUTSIDE THE MEMBER'S HOME.

### A. Legal Standard.

In Virginia, the elements of a breach of contract claim are: (1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) resulting injury or harm to the plaintiff. *Filak v. George*, 267 Va. 612, 619 (2004). "In order for a plaintiff to establish breach of contract on the basis of anticipatory repudiation, the repudiation must be clear and unequivocal, and it must cover the entire performance of the contract." *Link v. Weizenbaum*, 229 Va. 201, 203 (1985). A party does not anticipatorily repudiate, or breach, the contract when it acts in accordance with its terms. *See Chertoff Capital, L.L.C. v. Braes Capital, LLC*, No. 1:19cv631, 2019 U.S. Dist. LEXIS 231192, at *11-12 (E.D. Va. Oct. 31, 2019) ("But under the facts alleged by the plaintiff in the Amended Complaint, Syversen did not repudiate the contract. Rather, he exercised his right to terminate under the express language of the agreement.").

### B. The Agreement Expressly Excludes Drug Payments for Drugs Shipped Outside of the Home.

Both the Agreement and the Amendment contain essentially identical language excluding Drug Payments if the drugs were shipped anywhere except a member's home. *See* Ex. A, PCS § III ███████████████████████████████████████████████████████████████; *see* Ex. B PCS § III ███████████████████████████████████████████████████████████████. Therefore, contrary to Plaintiff's claims, Anthem is not liable to Plaintiff for any drugs that were shipped to a physician's office or

hospital. Accordingly, that portion of Plaintiff's contract claims predicated on unpaid claims for drugs delivered outside of the member's home must be dismissed. *See, e.g., Marathon Res. Mgmt. Grp., LLC v. C. Cornell, Inc.*, No. 3:19cv89, 2020 U.S. Dist. LEXIS 109892, at *29-30 (E.D. Va. June 23, 2020) (granting motion to dismiss contract claims because claims ran counter to plain language of contract); *Ransome v. O'Bier*, No. 3:16cv1002, 2017 U.S. Dist. LEXIS 60527, at *7 (E.D. Va. Apr. 20, 2017) (granting motion to dismiss contract claim based on the plain language of the contract); *Beiro v. CFA Inst.*, No. 3:18cv88, 2019 U.S. Dist. LEXIS 1807, at *10-11 (W.D. Va. Feb. 4, 2019) ("Because the plaintiff's claim for breach of the settlement agreement conflicts with the plain language of the contract, this claim must be dismissed.").

### C. The Agreement Expressly Excludes Per Diem Payments When the Pump Is Refilled or Administered Outside of the Home.

Throughout its Complaint, Plaintiff argues that "the Agreement does not limit or condition per diem charges based on where the drug is dispensed." Compl. ¶ 108. Plaintiff further alleges that Anthem has breached and has anticipatorily breached the Agreement by "assert[ing] that AIS could not bill the per diem *for any days* after a patient's pump was refilled if the refill occurred anywhere other than the home …" *Id.* ¶ 122 (emphasis in original); *id.* ¶ 169. Plaintiff's claim of breach, however, fails upon even a cursory reading of the Agreement and the Amendment.

The Agreement makes clear that Plaintiff is not to provide services outside of the home context. ██████████████████████████████████████████████████████

████████████████████████████████████ Ex. A, PCS § III. ████████████████

████████████████████████████████████████████████████████████████

████████████████████ *Id.*

As the Complaint lays out, the dispute regarding the per diem payment amounts dates back to at least December 2020. Compl. ¶ 96. In the midst of this dispute, Bond Pharmacy executed

the Amendment, which lends additional clarity as to when the Per Diem Payments are (and are not) to be made.  The Amendment reads, in relevant part:



Ex. B, PCS § III (emphasis added).

The language could not be clearer:  if the drug therapy was refilled or administered outside of the home, no per diems are available for that drug therapy, ████ *Id.*  Hence, that portion of Plaintiff's contract claims based on Anthem's refusal to make Per Diem Payments when the pump was refilled or administered outside of the member's home must be dismissed.  *See Marathon*, 2020 U.S. Dist. LEXIS 109892, at *29-30, *Ransome*, 2017 U.S. Dist. LEXIS 60527, at *7, and *Beiro*, 2019 U.S. Dist. LEXIS 1807, at *10-11, *supra*.

> **D.** **Anthem Is Allowed to Recoup And/Or Offset Payments Under the Agreement.**

Plaintiff also argues that "Anthem [] has breached the Agreement by improperly recouping payments."  Compl.  ¶ 156.  But the Complaint's allegations have no relation whatsoever to the actual terms of the Agreement:  Anthem clearly can recoup payments under the Agreement, irrespective of whether Bond Pharmacy contests those recoupments.



Ex. A, § 2.7.  And ████████

████████ *Id.* This clearly contradicts Plaintiff's arguments.  Compl. ¶ 153 (████████ ████████).  Therefore, Plaintiff's contract claims, to the extent they rely on allegedly improper recoupment by Anthem,

must be dismissed.

**E.** **Anthem's Payment Obligations Are Determined by the Agreement and the Amendment, Not the NHIA Standards Relied on by Plaintiff.**

In an effort to avoid the plain language of the Agreement and the Amendment, Plaintiff alleges that "Anthem is obligated to process and pay AIS's claims in accordance with the Agreement and NHIA Standards. Agreement §§ 2.5-2.6 & 9.7." Compl. ¶ 165. Again, Plaintiff mischaracterizes the plain language of the Agreement, as well as the NHIA Standards.

The Agreement, including Sections 2.5, 2.6, and 9.7, does not require Anthem to adhere to NHIA Standards. ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ The NHIA Standards are not included in the Participation Attachment, the PCS, the provider manual, or any Regulatory Requirements. ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. A, Art. I.

The NHIA Standards are none of these things. The NHIA is a private organization, not a government agency. Its standards, far from being ██████████████████████████████ are, by the NHIA's – and Plaintiff's – own admission, "voluntary" and nothing more than NHIA's personal "assessment of best coding practices."[8] In other words, Anthem is not obligated by law

---

[8] NHIA, National Coding Standard for Home Infusion Claims under HIPAA ("NHIA Standards") (2021) at 13, https://nhia.org/wp-content/uploads/2021/12/NHIA_Code_Std_2022-FINAL.pdf (last visited January 26, 2023) (defining "Meaning of Standard"; cited in Plaintiff's Complaint at ¶ 60, fn. 8 and referenced throughout).

or contract to follow NHIA's strictly voluntary standards.

Similarly, the various subparts of Section 2.6 make no mention of the NHIA or NHIA Standards. First, ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████ Ex. A, § 2.6.1. Second, ████████████ ████████████████████████████████████████████████████ *Id*. § 2.6.2. Third, ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ – none of which are or bear any relationship to the NHIA or its self-published Standards – ████ ████████████████████████████████████████ *Id*. And fourth, ████████████ ████████████████████████████████████████████████████████████████ ████████████████████ *Id*. § 2.6.3. These requirements regulate Plaintiff, not Anthem, and they in no way require Anthem to take any actions related to the NHIA.

Finally, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████ *Id*. Again, there is no reference to the NHIA, much less a statement that Anthem must somehow comply with the NHIA's self-published,

voluntary standards.

In sum, Plaintiff's reliance on the NHIA or NHIA Standards is misplaced. Anthem's payment obligations are governed by the Agreement and the Amendment, not the NHIA's suggested "Standards."

## IV.    Plaintiff Fails to State a Claim for Declaratory Judgment.

"The Declaratory Judgment Act contains a textual commitment to discretion: it provides that a court 'may declare ***the rights and other legal relations*** of any interested party seeking such declaration.'" *Lippincott v. PNC Bank, N.A.*, No. ELH-12-463, 2012 U.S. Dist. LEXIS 71825, at *9 (D. Md. May 22, 2012) (quoting *Wilton v Seven Falls*, 515 U.S. 277, 286 (1995) (emphasis added)). The Fourth Circuit has explained that a declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996).

Plaintiff Bond Pharmacy requests a "Declaratory Judgment" in Count IV of its Complaint, but fails to outline what declaration they are seeking, beyond a finding that they have prevailed on their breach of contract and anticipatory breach of contract claims. This is not the proper use of a declaratory judgment claim. *See, e.g., AvePoint, Inc. v. Knickerbocker*, 475 F. Supp. 3d 483, 488 (E.D. Va. 2020) ("It follows that a declaratory judgment is unavailable in situations where ... claims and rights asserted have fully matured, and the alleged wrongs have already been suffered."); *Metra Indus. v. Rivanna Water & Sewer Auth.*, No. 3:12CV00049, 2014 U.S. Dist. LEXIS 21568, at *5 (W.D. Va. Feb. 19, 2014) ("[a] declaratory judgment serves no 'useful purpose' when it seeks only to adjudicate an already-existing breach of contract claim") (quoting *Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 11 Civ. 7426, 2012 U.S. Dist. LEXIS

105895, at *33 (S.D.N.Y. July 25, 2012)).  Therefore, Plaintiff's claim for declaratory judgment should be dismissed.

## V.    PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

"Under Virginia law, unjust enrichment is an implied contract action based on the principles of equity."  *Butts v. Weltman, Weinberg & Reis Co.*, No. 1:13cvl 026, 2013 U.S. Dist. LEXIS 162483, at *2 (E.D. Va. Nov. 14, 2013) (citations omitted).  "A claim for unjust enrichment is quasi-contractual in nature and requires a plaintiff to show: (1) it conferred a benefit on the defendant; (2) the defendant 'knew of the benefit and should reasonably have expected to repay [the plaintiff] and (3) the defendant accepted or retained the benefit without paying for its value." *Willis N. Am. Inc. v. Walters*, No. 3:10cv462, 2011 U.S. Dist. LEXIS 34261, at *3 (E.D. Va. Mar. 30, 2011) (citation omitted).

Here, a contract governs the claims at issue.  Virginia courts regularly dismiss unjust enrichment claims when a contract governs, and there is no issue as to its enforceability.  As evidenced throughout this Motion and throughout the Complaint, *passim*, the Agreement governs the subject matter of the instant case, and Plaintiff's relationship with the Defendants is purely contractual.  When a contract governs an agreement between parties, "the equitable remedy of restitution grounded in quasi-contract or unjust enrichment does not lie."  *Carolina Conduit Sys. v. MasTec N. Am., Inc.*, No. 3:11CV133-HEH, 2011 U.S. Dist. LEXIS 122578, at *8 (E.D. Va. Oct 24, 2011); *Cortez-Melton v. Capital One Fin. Corp.*, No. 3:19cv127, 2021 U.S. Dist. LEXIS 36676, at *28-30 (E.D. Va. Feb. 26, 2021) (dismissing a claim for "unjust enrichment because a contract exists between [Plaintiff] and [Defendant]").  Thus, Plaintiff's unjust enrichment claim must also be dismissed.

## CONCLUSION

For the foregoing reasons, Anthem respectfully requests that this Court grant its motion to dismiss in its entirety and dismiss the Complaint with prejudice.

Date: February 3, 2023

ANTHEM HEALTH PLANS OF
VIRGINIA, INC. D/B/A ANTHEM BLUE
CROSS AND BLUE SHIELD

*/s/ Michael E. Lacy*
Michael E. Lacy (VSB No. 48477)
Sarah E. Siu (VSB No. 94716)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
Telephone:  (804) 697-1326
Facsimile:  (804) 697-6061
michael.lacy@troutman.com
sarah.siu@troutman.com

Virginia Bell Flynn (VSB No. 79596)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
301 S. College Street, 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1509
Facsimile: (704) 998-4051
virginia.flynn@troutman.com

Callan G. Stein (*pro hac vice forthcoming*)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
125 High Street, 19th Floor
Boston, MA 02110
Telephone: (617) 204-5100
callan.stein@troutman.com

Harry J. Liberman (*pro hac vice forthcoming*)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
875 Third Avenue
New York, NY 10022
Telephone: (202) 704-6000
harry.liberman@troutman.com

*Counsel for Defendant*