**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **BOND PHARMACY, INC., d/b/a AIS HEALTHCARE,** ) | |
| ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | **Case No. 1:22-cv-01343-CMH-IDD** |
| ) | |
| **v.** ) | |
| ) | |
| **ANTHEM HEALTH PLANS OF** ) | |
| **VIRGINIA, INC., d/b/a ANTHEM** ) | |
| **BLUE CROSS AND BLUE SHIELD,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

INTRODUCTION................................................................................................1

BACKGROUND................................................................................................2

LEGAL STANDARD .......................................................................................10

ARGUMENT ...................................................................................................10

I.    AIS Has Alleged Viable Breach Of Contract Claims........................................10

    A.    AIS Has Alleged Sufficient Facts To Support Its Breach Claims. ........................10

    B.    AIS's Breach Claims Are Not Subject To Any Heightened Standard...................11

    C.    The Agreement Does Not Bar AIS's Breach Claims.............................................13

II.    AIS Has Alleged A Viable Unjust Enrichment Claim.......................................14

III.    AIS Has Alleged A Viable Declaratory Judgment Claim. ...............................14

IV.    Anthem's Hypothetical Defenses Cannot Bar AIS's Real Claims. ...................15

CONCLUSION ................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) .................................................................................................15

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .............................................................................................10

*Ashton Med. Assocs., Inc. v. Aetna Health Management, Inc.*,
395 F.Supp.2d 415 (S.D. W. Va. 2005) ...................................................................15

*Bank of Montreal v. Signet Bank*,
193 F.3d 818 (4th Cir. 1999) ...................................................................................14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................11

*Capital One Financial Corp. v. Drive Financial Services LP*,
434 F. Supp. 2d 367 (E.D. Va. 2006) ......................................................................15

*Chesapeake Square Hotel, LLC v. Logan's Roadhouse, Inc.*,
995 F. Supp. 2d 512 (E.D. Va. 2014) ...........................................................10, 11, 12

*Cincinnati Ins. v. Ruch*,
940 F. Supp. 2d 338 (E.D. Va. 2013) ...............................................................11, 12

*Coleman v. U.S.*,
465 F. Supp. 3d 543 (E.D. Va. 2020) ......................................................................16

*Democratic Party of Richmond v. Brink*,
599 F. Supp. 3d 346 (E.D. Va. 2022) ......................................................................10

*DuPerry v. Life Ins. Co. of N. Am.*,
632 F.3d 860 (4th Cir. 2011) ...................................................................................16

*Edwards v. City of Goldsboro*,
178 F.3d 231 (4th Cir. 1999) ...........................................................................14, 15

*Goodman v. Praxair, Inc.*,
494 F.3d 458 (4th Cir. 2007) ...................................................................................13

*Great Am. Ins. v. GRM Management, LLC*,
2014 WL 6673902 (E.D. Va. 2014) .........................................................................12

*Harrell v. Colonial Holdings, Inc.*,
    923 F. Supp. 2d 813 (E.D. Va. 2013) ...................................................................................14

*Holloway v. Maryland*,
    32 F.4th 293 (4th Cir. 2022) .................................................................................................10

*In re Kazmi*,
    2013 WL 4859320 (Bankr. E.D. Va. 2013) .........................................................................14

*Link v. Weizenbaum*,
    326 S.E.2d 667 (Va. 1985) ...................................................................................................11

*Mylan Labs., Inc. v. Matkari*,
    7 F.3d 1130 (4th Cir. 1993) ............................................................................................10, 14

*N. Shore Med. Ctr. v. Cigna Health & Life Ins.*,
    2021 U.S. Dist. LEXIS 88901 ..............................................................................................12

*NAC Consulting, LLC v. 3Advance, LLC*,
    2023 WL 159768 (E.D. Va. 2023) .......................................................................................14

*Philips v. Pitt County Memorial Hosp.*,
    572 F.3d 176 (4th Cir. 2009) ..................................................................................................1

*Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.*,
    2011 WL 2134534, at *1 (S.D. Fla. 2011) ..........................................................................12

*Sanders v. UDR, Inc.*,
    2010 WL 3927804 (E.D. Va. 2010) .....................................................................................11

*Simmons v. T.M. Associates Management, Inc.*,
    287 F. Supp. 3d 600 (W.D. Va. 2018) ............................................................................13, 14

Statutes

28 U.S.C. § 2201.......................................................................................................................15

Fed. R. Civ. P. 8........................................................................................................................11

Fed. R. Civ. P. 12..........................................................................................................10, 11, 13

Fed. R. Civ. P. 15......................................................................................................................13

Plaintiff Bond Pharmacy, Inc., d/b/a AIS Healthcare ("AIS"), submits the following

Memorandum in Opposition to Defendant Anthem Health Plans of Virginia, Inc., d/b/a Anthem

Blue Cross Blue Shield's ("Anthem's"), Motion to Dismiss.

## INTRODUCTION

This case stems from Anthem's systemic refusal to pay the providers that care for its

members.  AIS is just one of many providers in Virginia that Anthem – a health insurance

behemoth – has refused to pay "hundreds of millions of dollars" in claims while it has churned

out billions in profits.[1]

Beginning in 2019, Anthem contracted with AIS to provide drugs and home infusion

therapy ("HIT") to its members in exchange for certain contractual payments based on claims

submitted using specific healthcare codes.  Yet, after approving AIS's claims under those codes

for months without issue, Anthem began denying AIS's claims and recouping payments.  AIS

sought to resolve these denials informally for years, to no avail.  When AIS confronted Anthem,

Anthem strung it along with delays, shifting explanations, and empty promises to pay AIS, all

while AIS continued to care for Anthem's members for free.  Once it finally became clear,

however, that Anthem had no intention of ever voluntarily complying with its express

contractual obligations, AIS was left with no choice but to bring this action to recover for the

costs of the vital care it provided to Anthem's members for years without payment.

Now, in response to AIS's suit, Anthem seeks to continue to stall and dodge its

contractual obligations with a flawed motion the Court should promptly deny.  While Anthem

---

[1]  Jay Hancock, *Major Insurers Running Billions of Dollars Behind on Payments to Hospitals & Doctors*, KHN https://khn.org/news/article/anthem-united-major-insurers-behind-on-payments-billions-owed-hospitals-doctors-covid/ (last visited Mar. 17, 2023).  The Court may consider materials in the public domain as well as documents referenced in the Complaint.  *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

argues AIS has failed to allege viable breach claims because it did not identify every patient

claim at issue, AIS need not do so to survive dismissal. The heighted standard that Anthem

invents and seeks to have the Court apply here has no application to claims like AIS's, and AIS

has more than alleged plausible claims that meet Rule 8 and clear Rule 12's low bar. Even if

there were such a requirement, AIS has met it in any event, by supplying Anthem with detailed

claims documents from which it can glean all the information it says it needs – information that,

in truth, it has always had. And AIS's allegations directly refute the notion that the parties'

agreement somehow "excludes" AIS's claims.

Anthem is further mistaken that AIS's claims for unjust enrichment and declaratory relief

are "duplicative" of its breach claims. AIS may assert its unjust enrichment claim in the

alternative, just as it has done. And AIS's declaratory judgment claim appropriately seeks

forward looking relief. Anthem also cannot seriously argue that AIS's claims are barred by

defenses it may one day but has yet to actually assert. The viability of any defenses Anthem may

raise is not before the Court now. The Court should deny Anthem's motion.

## BACKGROUND

### *AIS Provides Bespoke Compounded Drugs And HIT Services*

AIS is a leading national provider of specialized HIT and related services. Complaint,

ECF No. 1 ("Cmplt.") ¶ 4. HIT is the creation, dispensing, and infusing of medication by

parenteral means. *Id.* ¶ 36. Under HIT therapy, patients receive continuous, daily treatment at

home – as opposed to a far more costly in-patient setting – and can resume normal activities

while recovering from illness. *Id.* ¶ 37. HIT is typically prescribed for patients who have serious

and abiding illnesses such as chronic pain from cancer, multiple sclerosis, spinal cord injuries, or

other debilitating conditions. *Id.* ¶ 38. If this therapy were unavailable, these patients would

have to take mind-addling oral opioids (and be exposed to their devastating side-effects) or live

out their days in an in-treatment facility.  *Id.* ¶ 37.

HIT carries substantial and well-recognized benefits for patients and payors.  By receiving treatment at home or other out-patient locations, patients are able to "resume normal lifestyles and work activities while recovering from illness."  *Id*. ¶ 37.  And HIT is far less costly than inpatient treatment at a hospital or skilled nursing facility.  *Id.* ¶ 39.

AIS offers a specialized kind of HIT whereby it develops and dispenses patient-specific compounded medications at the direction of a patient's treating physician that are continuously infused via implanted intrathecal pumps.  *Id.* ¶ 42.  The pumps are surgically implanted and filled with prescribed medication that the pump continuously infuses through a catheter to the patient's spinal column.  *Id.* ¶ 43.  "Infusion" refers to the continuous release of AIS's medication as it proceeds through a patient's pump.  *Id.* ¶ 44.[2]  "Dispensing" is the custom compounding and delivery of the medication to the patient.  *Id.* ¶ 45.  These bespoke medications are designed and used as part of AIS's HIT for its patients.  *Id.* ¶ 20.

Physicians often prescribe intrathecal pumps for patients with severe chronic pain because they lessen pain and muscle spasticity caused by systemic conditions, such as cerebral palsy or spinal cord injuries.  *Id.* ¶ 38.  Where traditional infusion would require a nurse to connect the patient to an external pump and actively push medications to the patient, the implanted pumps can infuse the patient's medication, wherever the patient is and without clinical interaction, daily for up to 180 days before needing to be refilled.  *Id.* ¶ 46.  However, for the medications to remain sterile and stable for up to 180 days of continuous infusion, the medications must be uniquely prepared for each patient.  *Id.*  Accordingly, AIS invests

---

[2]  The infusion is separate and apart from pump refills by a physician or nurse.  Pump refills are billed by the physician or nurse under a separate code.

substantial capital and resources to make the highest quality medications for patients that will properly operate within their implanted intrathecal pumps for extended periods of time. *Id.* ¶¶ 46-47.

In addition to preparing individualized compounded medications, AIS also invests substantial resources to provide patients with ongoing care and services. *Id.* ¶ 51. As soon as a patient receives AIS's medications, the patient is considered "on-service" with – that is, under the care of – AIS. *Id.* To meet that ongoing responsibility, AIS provides patients with ongoing care and a range of available services, including continuous patient monitoring, professional pharmacy services, care coordination, nursing services, billing and financial support services, and administrative services. *Id.* ¶¶ 52-53. For example, AIS has a call-center that provides all patients and treating physicians with "24-7/365" telephone access to pharmacists and nurses for treatment- and billing-related support. *Id.* ¶ 54. These services are available to patients as part of their ongoing therapy for no additional charge. *Id.* ¶ 53.

### *The Parties' Agreement*

Recognizing the value of AIS's therapies, Anthem entered a Provider Agreement ("Agreement") with AIS in 2019 for it to provide specially-compounded drugs and HIT to its members. Agreement §§ 2.6 & 8.1. In return for these services to its members, Anthem agreed to pay AIS for the HIT services and drugs that it provides under specific codes established by the Healthcare Common Procedure Coding System ("HCPCS"). *Id.*, Plan Comp. Schedule §§ I-II & PCS Attachment §§ I–III.

For HIT services, Anthem agreed to pay AIS in accordance with the per diem reimbursement model established by the National Home Infusion Association ("NHIA"). *Id.* §§ 2.5-2.6 & 9.7. The parties specifically contemplated and agreed on the NHIA's per diem reimbursement model when negotiating the Agreement. Cmplt. ¶ 59. That model is

commonplace and many payors, including the Blue Cross Blue Shield Association and Blue Cross Blue Shield of Mississippi, have adopted it and publicly concluded that AIS's billing practices are in accordance with it.  *Id.*, Exhibit ("Ex.") 1.

Using HIT-specific billing codes, AIS bills a negotiated per diem rate for each day a patient has "access" to a "prescribed therapy" – that is, the custom medication prepared for them that is continually infused by the implanted pump.[3]  The per diem rate is intended to bundle, under one reimbursement code, all of the many varied costs and expenses that HIT providers incur to develop the therapy and provide patient care and services.  Cmplt. ¶ 61.  For patients with implanted intrathecal pumps, the per diem applies each day the patient is on the pump and has access to the medication.  Agreement, Plan Comp. Schedule § III.  Consistent with the purpose of HIT to allow patients to go about their lives while receiving treatment, there does not need to be a daily interaction between the HIT provider and patient for a per diem to apply.  Cmplt. ¶ 63.  In other words, the per diem is not intervention based.

Under the Agreement, AIS bills its per diem charges under Code S9328, which applies specifically to HIT providers like AIS that treat patients with implanted intrathecal pumps.  Agreement, PCS Attachment § III.  Code S9328 includes "implanted pump pain management infusion," "administrative services, professional pharmacy services, care coordination, and all necessary supplies and equipment (drugs and nursing visits coded separately) per diem."[4]  *Id.*, PCS Attachment § III at 144.  Thus, the Code bundles multiple covered services into one per diem charge, meaning a provider may bill that code whenever it provides at least one of the

---

[3]  NHIA, *National Coding Standard for Home Infusion Claims under HIPAA*, at 98, https://nhia.org/wp-content/uploads/2023/01/NHIA_Code_Std.pdf (last visited March 17, 2023) ("NHIA Standards").
[4]  *Id.* at 112.

covered services. *Id.* As such, AIS may bill Code S9328 each day a patient has access to medication. *Id.* AIS may also bill Code S9328 for providing any one of the other listed covered services. *Id.*

Anthem expressly agreed that Code S9328 "shall" bundle together multiple HIT services and supplies, as provided for under the NHIA Standards, including:

- **"*Professional pharmacy services*,"** including services to "order, prepare, compound, dispense, deliver, administer, or monitor any drug or substance used" in HIT, *see* PCS Attachment § III at 144; *compare id.*, *with* NHIA Standards at 99-101;

- ***"Administrative services,"*** including "training and any additional professional services" and "delivery/ dispensing expenses," *see* PCS Attachment § III at 144; *compare id.*, *with* NHIA Standards at 103-04;

- ***"Care coordination,"*** including "clinical monitoring" and "other skilled nursing services," *see* PCS Attachment § III at 144; *compare id.*, *with* NHIA Standards at 101; and

- ***"Supplies and equipment,"*** including "bandages," "cotton," "alcohol, "dressing kits," and all other "supplies related to infusion therapy," *see* PCS Attachment § III at 144; *compare id.*, *with* NHIA Standards at 101-02.

Charges for drugs and nursing services are not included in the per diem and are separately billed and reimbursed. Agreement, PCS Attachment §§ I-II; *compare id.*, *with* NHIA Standards at 105. The Agreement also excludes reimbursement for services provided "in a physician's office." Agreement, PCS Attachment § III. Though a refill may be done in the physician office, the refill procedure does not administer or infuse medication to the patient. Rather, the refill simply fills the implanted pump reservoir, and the implanted pump will begin infusing or administering the programmed dose of medication while the patient is at home. Accordingly, the patient is receiving infusions in the home, and the per diem may be billed. *Id.*

AIS separately bills Anthem for each patient's compounded drugs and its materials using a specific HCPCS "J-Code" and National Drug Codes ("NDCs"). *Id.*, Plan Comp. Schedule

§§ I-II & PCS Attachment § I. The J-Code and NDC rates only reimburse the costs of raw drug

powders and materials. They do not compensate AIS for its costly compounding and other

pharmacy operations. *Id.*

The Agreement excludes drugs that are "not part of" a patient's HIT from reimbursement.

*Id.*, PCS Attachment § 1. However, AIS's drugs are only developed and dispensed as part of a

patient's prescribed HIT, and thus, the exclusion does not apply. Cmplt. ¶¶ 47-50.[5]

If Anthem overpays a claim, it may recoup the payment. Agreement § 2.7. But Anthem

cannot do so unless it provides AIS with 30 days' written notice and affords AIS an opportunity

to dispute the recoupment. *Id*.

### *Anthem's Ongoing Breaches Of The Agreement*

After the parties entered the Agreement in 2019, Anthem approved and paid AIS's claims

without issue for months. *Id.* ¶ 76. AIS properly billed its drug claims under the appropriate

NDCs and HCPCS codes. *Id.* ¶ 77. AIS further properly submitted claims under Code S9328

for providing HIT services in accordance with the Agreement. *Id.* ¶ 78.

But beginning in October 2020, Anthem abruptly stopped paying AIS's claims and began

recouping past payments. *Id.* ¶ 80. For AIS's drug claims, Anthem alleged AIS's billing

practices were incorrect because the drugs "should not be reported" using certain NDCs that

Anthem had previously required. *Id.* ¶ 85. In response, AIS modified its billing practices for

drug claims using Anthem's newly requested NDCs. *Id.* ¶ 87. But months later, Anthem

changed its position again, this time asserting AIS must instead bill its claims using an HCPCS

code. *Id.* ¶ 88. In response, AIS again modified its billing practices and resubmitted its claims,

---

[5] The Agreement also excludes reimbursement for drugs shipped to a "physician's office, hospital, or any setting other than the home or Ambulatory Infusion Suite." Agreement, PCS Attachment § III at 149.

all of which Anthem agreed to reimburse. *Id.* ¶¶ 89-90. Anthem also agreed to cease further

recoupments. *Id.* ¶ 90. But to date, Anthem has failed to pay more than a fraction of AIS's drug

charges and informed AIS it will not pay any of its current or future drug claims. *Id.* ¶ 91.

In December 2020, Anthem also began to recoup and deny AIS's Code S9328 claims for

HIT services. *Id.* ¶¶ 95-96. Anthem audited hundreds of AIS's claims billed under Code S9328

and asserted that AIS only "supplied" drugs and "acted as a drug distributor." *Id.* ¶¶ 97-99. AIS

met with Anthem to explain its billing practices and provided documentation showing patients

had access to their prescribed HIT therapy. *Id.* ¶ 100. Anthem accepted AIS's explanations and

agreed to pay AIS's Code S9328 claims. *Id.* ¶ 101. But Anthem once again quickly reneged on

its promises and continued to deny AIS's claims. *Id.* ¶¶ 101-102.

AIS promptly disputed Anthem's denials and provided notice of its ongoing breaches of

the Agreement on March 31, 2021. *Id.* ¶ 103. Anthem finally responded on June 10, 2021, with

yet another supposed justification for its denials. *Id.* ¶¶ 104-107. This time, Anthem asserted

AIS could not bill Code S9328 because it "shipped" the patient's drugs "to the doctor's office."

*Id.* ¶ 108. But the Agreement does not impose any limitation for Code S9328 claims based on

where the patient's drug is dispensed, which is facially inconsistent with the terms of the Code in

any event. Agreement, PCS Attachment § III. On June 28, 2021, AIS disputed Anthem's

allegations and demanded it cure its breaches. *Id.* ¶ 111. Anthem did not respond to AIS's

correspondence for one year.

The parties nevertheless attempted to resolve their dispute for Code S9328 claims by

amending the Agreement. In December 2021, the parties amended the Agreement to clarify that

Code S9328 would not be "payable for any date" the pump was refilled at a physician's office

instead of the patient's home. *Id.* ¶ 113; Mot., Ex. B. AIS also provided Anthem with

information and lists of the disputed claims. Mot. At 9, n.7.

But shortly after amending the Agreement, Anthem placed AIS on prepayment review and demanded AIS to provide thousands of medical records and other support for its per diem charges. Cmplt. ¶ 114. Anthem refused to inform AIS what medical records were missing or direct AIS to any applicable policy. *Id.* ¶ 115. AIS nevertheless submitted thousands of supporting documents, which Anthem ultimately concluded supported AIS's claims and justified payment. *Id.* ¶ 118. Consequently, in February 2022, Anthem took AIS off prepayment review, and admitted in subsequent meetings that AIS's billing practices were proper. *Id.* ¶ 119. Yet, Anthem never paid AIS's Code S9328 claims. *Id.* ¶ 120.

In May 2022, AIS again notified Anthem of its breaches and demanded Anthem pay all outstanding amounts. *Id.* ¶ 121. But in response, Anthem again accused AIS of improperly billing Code S9328. *Id.* ¶ 122. It asserted that AIS could not bill Code S9328 for *any days* after a patient's pump was refilled anywhere other than the home – even though the patient remained on-service with AIS and had access to its therapy and services. *Id.*

At the same time, however, Anthem committed to resolving the dispute amicably. *Id.* ¶ 123. In light of that promise, AIS refrained from submitting thousands of Code S9328 claims so the parties could negotiate a resolution. *Id.* ¶ 124. But during every meeting, Anthem offered shifting excuses for delaying and refusing to pay AIS. *Id.* ¶ 126.

While AIS tried to negotiate an informal resolution of the dispute, Anthem finally responded to AIS's correspondence disputing Anthem's audit on June 25, 2022. *Id.* ¶ 128. Anthem informed AIS that its claims were properly billed and payable under the Agreement. *Id.* But Anthem never paid these Code S9328 claims, or any other claims, and stonewalled AIS for many more months. *Id.* ¶¶ 129-31. Then, in October 2022, Anthem notified AIS that it would

not pay any of its existing, withheld, or future Code S9328 claims. *Id.* ¶ 131.

As a result of Anthem's delay and misdirection tactics, it has failed and refused to pay AIS's outstanding drug and Code S9328 claims worth hundreds of thousands of dollars. *Id.* ¶ 137. Without any hope of Anthem finally meeting its obligations, AIS filed this lawsuit for breach and anticipatory breach of contract, unjust enrichment, and declaratory relief. *Id.* ¶¶ 139-59. Indeed, at the same time that Anthem has refused to pay AIS, like so many other providers, AIS has continued to care for Anthem's members – for free. *Id.* ¶ 138.

## LEGAL STANDARD

A complaint that states a "plausible" claim for relief readily withstands a motion to dismiss. *Chesapeake Square Hotel, LLC v. Logan's Roadhouse, Inc.*, 995 F. Supp. 2d 512, 515 (E.D. Va. 2014); *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); Fed. R. Civ. P. 12(b)(6). To state a plausible claim, a plaintiff need only allege enough "factual content that allows the Court to draw the reasonable inference that the defendant is liable." *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022). And in its review under Rule 12, the Court must "accept as true all well-pleaded allegations" and construe the "complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court is not to consider, let alone resolve, "contests surrounding facts, the merits of a claim, or the applicability of defenses." *Democratic Party of Richmond v. Brink*, 599 F. Supp. 3d 346, 353 (E.D. Va. 2022). Applying these standards here, the Court should deny Anthem's motion.

## ARGUMENT

### I. AIS Has Alleged Viable Breach Of Contract Claims.

#### A. AIS Has Alleged Sufficient Facts To Support Its Breach Claims.

Anthem argues that AIS has failed to "allege sufficient facts" to support its breach claims. Mot. at 7-9. Not so. A party asserting a breach claim need only allege that a "legally

enforceable" contract exists, defendant breached the contract, and damages resulted from defendant's breach. *Sanders v. UDR, Inc.*, 2010 WL 3927804, at *3 (E.D. Va. Oct. 4, 2010). And to assert a claim for anticipatory breach, a plaintiff need only further allege that defendant made a "clear and unequivocal" repudiation of performance. *Link v. Weizenbaum*, 326 S.E.2d 667, 668-69 (Va. 1985).

AIS has alleged facts supporting each of the elements of both of its claims:

- The parties entered a legally binding contract, Cmplt. ¶¶ 57, 140 & 161;

- Anthem agreed to pay AIS for providing Anthem members with drugs and HIT services and provide AIS notice before recouping payments, *id.* ¶¶ 142-145 & 152;

- AIS provided members with drugs and HIT services and properly submitted its claims for reimbursement pursuant to the Agreement, *id.* ¶¶ 141-43 & 162-64;

- Anthem breached the Agreement by improperly denying and refusing to pay outstanding and future claims as well as recouping payments without notice, *id.* ¶¶ 155-57 & 174-78; and

- AIS has suffered damages caused by Anthem's breaches, *id.* ¶¶ 132-37.

As such, AIS's breach claims are "sufficiently well-pled" and easily survive Rule 12 review. *Sanders*, 2010 WL 3927804, at *4.

**B. AIS's Breach Claims Are Not Subject To Any Heightened Standard.**

Anthem argues that AIS must also identify and allege facts for every patient claim in dispute. Mot. at 7. But such a heightened pleading standard is entirely inconsistent with basic federal pleading requirements. As this Court has explained, a plaintiff need only allege "a short and plain statement" of her legal claims so as to " 'give the defendant fair notice' " of the claims and relief sought. *Chesapeake Square Hotel, LLC*, 995 F. Supp. 2d at 514 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); Fed. R. Civ. P. 8(a)(2) & 12. That standard "governs" and applies to breach claims like those asserted by AIS. *Cincinnati Ins. v. Ruch*, 940

F. Supp. 2d 338, 341 (E.D. Va. 2013); *Chesapeake Square Hotel, LLC*, 995 F. Supp. 2d at 515.

Nor would it be practical to require AIS to provide "detailed factual allegations" surrounding the

tens of thousands of patient claims at issue. *Cincinnati Ins.*, 940 F. Supp. 2d at 342. That

approach is the opposite of the notice pleading mandated by Rule 8.

Not surprisingly, the cases Anthem cites do not even apply the heightened pleading

standard it argues for here. Mot. at 7-9. In those cases, the defendants were not on "notice" of

the plaintiffs' claims because they failed to allege facts identifying the medical services and

plans at issue. *N. Shore Med. Ctr. v. Cigna Health & Life Ins.*, 2021 U.S. Dist., LEXIS 88901, at

*11-12 (S.D. Fla. 2021). For example, in *N. Shore Med. Ctr.*, multiple hospitals asserted

statutory claims against an insurer without identifying or alleging any facts about the services

provided by each hospital. *See id.* Accordingly, the court dismissed the complaint because it

was "impossible to discern" what services were provided, "which [h]ospitals actually provided

the services," and thus, which hospitals had "standing to sue." *Id.* at *10. And likewise in

*Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.*, the court dismissed claims brought by

six providers against five different insurers under ERISA because they failed to identify the

services and care provided by each provider, the terms of the insurance plans, and which insurer

processed the claims. *See* 2011 WL 2134534, at *1 (S.D. Fla. 2011).

But unlike in those cases, AIS has alleged more than "sufficient" facts to afford Anthem

"fair notice" of its claims here. *Great Am. Ins. v. GRM Management, LLC*, 2014 WL 6673902,

at *1 (E.D. Va. 2014). AIS alleges that it provided HIT services to and specially compounded

drugs for Anthem members. Cmplt. ¶¶ 65, 72, 86-91, 97-99 & 129-131. AIS billed for those

drugs and services under two discrete billing codes: Code S9328 and J-Codes. *Id.* ¶¶ 65, 72-77,

86-91, 97-99 & 129-131. And AIS alleges the time period when Anthem improperly denied its

claims for the drugs and services provided to members.  *Id.* ¶ 80.  Thus, unlike in *N. Shor Med.*,

Anthem can readily identify the services AIS "actually provided," the outstanding claims, and

the insurance coverage at issue.  LEXIS 88901, at *10.

But putting aside AIS's well-pled claims, Anthem already has the list of disputed patient

claims and information in any event.  AIS provided Anthem with claims information leading up

to this litigation.  Mot. At 9, n.7.  And more recently, AIS provided Anthem with additional

claims information in advance of mediation.  Of course, Anthem has always had the patient

claims information anyway based on AIS's claims.  Cmplt. ¶¶ 87, 89, 100-102, 122-127

& 133-135.[6]

## C. The Agreement Does Not Bar AIS's Breach Claims.

Anthem also argues the Agreement bars AIS's breach claims because it excludes drugs

and HIT services provided outside of a patient's home.  Mot. at 12-14.  But AIS alleges that it

billed and submitted its claims *in compliance* with the Agreement.  Cmplt. ¶¶ 6-7, 73, 90-92

& 131-136.  AIS alleges it provided HIT services in patients' homes and did not bill when a

treating physician refilled a patient's intrathecal pump.  *Id.*  ¶¶ 60-70; Agreement, PCS

Attachment § III (authorizing reimbursement for HIT services provided in the patient's home).

And AIS alleges it properly dispensed the patient's drugs.  Cmplt. ¶¶ 47-50; Agreement, PCS

Attachment § III.

At bottom, Anthem just seeks a premature and improper merits ruling on AIS's breach

claims.  Mot. at 12-14; *Simmons v. T.M. Associates Management, Inc.*, 287 F. Supp. 3d 600, 606

---

[6]  Anthem argues it cannot determine which defenses to raise without additional allegations.
Mot. at 9.  Nonsense.  AIS is not required to plead "matters that might be responsive to
affirmative defenses."  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466-67 (4th Cir. 2007).  And of
course, Anthem is free to assert any defenses now and during discovery.  *See* Fed. R. Civ. P. 12
& 15.

(W.D. Va. 2018) (denying motion to dismiss where defendant relied on assertions outside of the pleadings to seek a merits ruling). But breach claims and issues of contract interpretation are not appropriate for resolution on a Rule 12 motion. *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 821 (4th Cir. 1999); *Edwards*, 178 F.3d at 243-44 (explaining "contests surrounding facts" and "the merits of a claim" are not properly considered on a Rule 12 motion). As such, the Court should deny Anthem's motion. *See Simmons*, 287 F. Supp. 3d at 606.[7]

## II. AIS Has Alleged A Viable Unjust Enrichment Claim.

While Anthem does not allege AIS's unjust enrichment claim fails to state a viable claim, it nevertheless alleges it is duplicative of its breach claim. Mot. at 18. But AIS is free to allege an equitable unjust enrichment claim in the alternative, just as it has done here. *See Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 827 (E.D. Va. 2013). AIS's unjust enrichment claim is thus well pled and may "move forward." *NAC Consulting, LLC v. 3Advance, LLC*, 2023 WL 159768, at *5 n.4 (E.D. Va. 2023); *see* Cmplt. ¶¶ 77-80, 84-86, 93, 129-132 & 184-186.

## III. AIS Has Alleged A Viable Declaratory Judgment Claim.

Anthem argues AIS's declaratory judgment claim is duplicative of its breach claims as well. Mot. at 17. But a declaratory judgment is a "forward-looking mechanism" that is "intended to guide the parties' behavior in the future." *In re Kazmi*, 2013 WL 4859320 at *2 (Bankr. E.D. Va. 2013). That is the purpose of AIS's claim here: AIS seeks a declaration impacting the parties' *future* "rights and legal duties under the Agreement." Cmplt. ¶¶ 189

---

[7] While Anthem also argues the NHIA Standards do not apply, it is mistaken. Mot. at 15–16. The NHIA Standards establish "the national standard" for per diem reimbursement, which the parties adopted under the Agreement. NHIA Standards at 106; Agreement, PCS Attachment § III. The Agreement even quotes from the standards and adopts the per diem reimbursement model to "include" and bundle each of the core components of HIT into a single code – that is, Code S9328. *Id.* In any event, AIS has alleged the parties negotiated and adopted the NHIA's per diem reimbursement model under the Agreement and through their course of conduct, which must be accepted as true at this stage. *See Mylan Labs., Inc.*, 7 F.3d at 1134; Cmplt. ¶¶ 59-67.

& 193.  Specifically, AIS asks the Court to "declare" whether Anthem must pay future Code

S9328 and drug claims under the Agreement.  Cmplt. ¶¶ 92 & 131; 28 U.S.C. § 2201.  Such a

declaration will properly resolve a "controversy" between the parties – that is, how they are to

operate under the Agreement going forward.  *Capital One Financial Corp. v. Drive Financial*

*Services LP*, 434 F. Supp. 2d 367, 357 (E.D. Va. 2006).  Accordingly, AIS's declaratory

judgment claim should not be dismissed as "duplicative."

## IV.  Anthem's Hypothetical Defenses Cannot Bar AIS's Real Claims.

Finally, Anthem argues that AIS's claims should be dismissed based on affirmative

defenses it "expects" to raise, but has not yet actually raised.  Mot. at 9.  But the "applicability"

of defenses is not properly resolved on a Rule 12 motion, particularly where a defense is based

on "pure speculation."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999).

That is the case here.  While Anthem asserts various defenses "may" apply, it does not point to

any factual allegations that supports them.  Mot. at 9.  Accordingly, the Court should not

consider any such possible defenses now.  *Id.*

Even if Anthem could properly argue its affirmative defenses now – it cannot – they lack

merit in any event.  *First*, AIS's claims are not subject to preemption under ERISA.  Mot. at 10.

AIS has not brought any claims under that statute.  Cmplt. ¶¶ 57, 73-75 & 139-188.  Nor would

ERISA preemption even apply because AIS's claims are based on Anthem's actions arising from

an "independent legal duty" under the Agreement.  *Aetna Health Inc. v. Davila*, 542 U.S. 200,

210 (2004); *Ashton Med. Assocs., Inc. v. Aetna Health Management, Inc.*, 395 F.Supp.2d 415,

418-419 (S.D. W. Va. 2005) (holding ERISA preemption does not apply to claims arising under

"the terms of a provider agreement"); Cmplt. ¶¶ 57 & 73-75.

*Second*, the Agreement's limitations period does not bar AIS's claims.  Mot. at 11.  AIS

alleges that its claims fall within that period.  *See* Agreement § 6.3; Cmplt. ¶¶ 83-92.  And *third*,

any exhaustion of Anthem's appeal process has either run its course or is utterly futile. Mot. at 12; *see DuPerry v. Life Ins. Co. of N. Am.*, 632 F.3d 860, 863 (4th Cir. 2011); *Coleman v. U.S.*, 465 F. Supp. 3d 543, 550 (E.D. Va. 2020); Cmplt. ¶¶ 83-135. Anthem has repudiated and refused to meet its contractual obligations for years. More administrative shenanigans will not change its mind and only further delay any relief for AIS. Cmplt. ¶¶ 83-135.

## CONCLUSION

The Court should deny Anthem's motion.

Dated: March 17, 2023

Respectfully submitted,

By: /s/ Paul A. Werner
Paul A. Werner (VSB No. 48910)
Imad Matini (VSB No. 90126)
Maria-Laura C. Coltre (VSB No. 92177)
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006-6801
(202) 747-1931 (Phone)
(202) 747-3912 (Fax)
pwerner@sheppardmullin.com
imatini@sheppardmullin.com
*Attorneys for Plaintiff*