# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **BOND PHARMACY, INC., d/b/a AIS HEALTHCARE,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:22-cv-01343-CMH-IDD** |
| **ANTHEM HEALTH PLANS OF VIRGINIA, INC., d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD,** | |
| **Defendant.** | |

## ANSWER AND COUNTERCLAIM
## OF ANTHEM HEALTH PLANS OF VIRGINIA, INC.

Defendant Anthem Health Plans of Virginia, Inc., d/b/a Anthem Blue Cross and Blue Shield ("Anthem" or "Defendant") hereby files its Answer to the Complaint filed by Plaintiff Bond Pharmacy, Inc., d/b/a AIS Healthcare ("AIS"). Without waiving its affirmative and other defenses incorporated herein, Anthem responds to the allegations in the Complaint as follows:

### INTRODUCTION

Anthem contracted with Bond Pharmacy, Inc. d/b/a AIS Healthcare ("AIS") for AIS to provide a specific set of services to Anthem members: home infusion therapy ("HIT") services. When AIS provided one of those contracted-for services and then properly submitted a claim to Anthem for payment, Anthem paid it. At issue in this litigation are *improperly* submitted claims by AIS for which AIS is not entitled to payment. AIS's billing practices, which appear to be the

subject of federal investigation, are improper under the parties' Provider Agreement for at least two reasons.[1]

First, under the Provider Agreement, Anthem only contracted with AIS for it to provide HIT services it rendered to Anthem members who want their pump refilled in their home (as opposed to the treating physician's office). If AIS personnel went to an Anthem member's home and refilled the member's pump in the home, then AIS was authorized to provide, and Anthem was obligated to pay for, those services, including the provision of the medication (the "Drug Claims") and the daily *per diem* amount on which AIS and Anthem agreed in the Provider Agreement to cover AIS's provision of additional services to the member (the "Per Diem Claims").

Conversely, if a member went to his/her physician's office and the physician refilled the pump, Anthem would expect the *physician* to bill Anthem for that medication and service.[2] Thus, whenever a patient received a pump refill in a physician's office, the Provider Agreement did *not* obligate Anthem to pay AIS for services. As many of the Anthem members served by AIS are Medicare members, this arrangement is consistent with guidance issued by the Centers for Medicare and Medicaid Services ("CMS") in 2011, which confirmed that pharmacies "may not bill Medicare for drugs purchased by a physician for administration to a Medicare beneficiary." *See* **Exhibit B**.

Per the Provider Agreement, Anthem was obligated to pay the claims that AIS properly submitted and that fell into the former category (home refills). But, as for those claims AIS

---

[1] Just last month, the Federal Bureau of Investigation ("FBI") executed search warrants at AIS's offices in Mississippi and removed materials from the offices. Although the FBI did not comment on the purpose of the raid, AIS's comment regarding the raid suggests that it relates to AIS's billing practices. *See* Ross Adams, *FBI Descends Upon Ridgeland Office Building*, Mar. 2, 2023 (**Exhibit A**).

[2] If AIS shipped a drug to a physician's office, Anthem would still expect the physician to bill Anthem for that medication; reimbursement to AIS would be between AIS and the physician.

submitted that fell into the latter category (office refills), Anthem had no obligation under the Provider Agreement to pay for those claims.  The Provider Agreement stated as follows:



Provider Agreement, PCS Attachment, Section III (emphasis in original). [3]

And in December 2021, Anthem and AIS made it even clearer:



December 15, 2021, Amendment, PCS Attachment, Section III (first emphasis added). [4]

This amendment language, in particular, squarely contradicts AIS's allegations in this litigation, a fact that AIS, itself, explicitly acknowledged in a PowerPoint presentation it provided to Anthem in June 2022.  In that PowerPoint presentation, AIS wrote:



---

[3]  The Provider Agreement is attached as Exhibit A to Anthem's Motion to Dismiss and Exhibit F hereto.

[4]  The Amendment is attached as Exhibit B to Anthem's Motion to Dismiss and Exhibit G hereto.

*See* **Exhibit C**; *see also* **Exhibit D**.

AIS agreed to this amendment because it anticipated that Anthem members, through AIS's prompting or otherwise, would agree to have their pumps refilled at their homes, rather than their physicians' offices. AIS, in fact, represented to Anthem that it had made a multi-million-dollar investment in nursing staff in 2021, precisely so that it would be able to service members in their homes. *Id.* However, this expected shift did not occur, as AIS admitted that very few members who were having their pumps refilled in office settings wanted to transition to infusion therapy services in their home. Most members continued to visit physicians' offices to have their pumps refilled. According to AIS, of the 1,766 members who had been receiving services in physicians' offices previously, only 46 of them transitioned to receiving in-home care. *See id.*

Despite this unambiguous contractual language and acknowledged exclusions, AIS has submitted Drug Claims and Per Diem Claims for services it provided to Anthem members who had their pumps refilled in a physician's office. In addition to the contract not obligating Anthem to pay for these services, in the vast majority of cases, AIS performed *zero* services for those Anthem members beyond shipping its medication to the physician's office. That is because, in cases where a physician refills a member's pump in the office, the member remains under the care of that *physician* and will, thus, typically call the physician, *not AIS,* for any additional services the member may need. Conversely, when AIS performs the refilling of the pump in the member's home, the member is familiar with and may stay under the care of AIS. This logically connects to the Provider Agreement's limited obligation that Anthem pay AIS's claims when the place of service was the member's *home.*

There is a second reason, independent of the Provider Agreement's exclusions (quoted above), that Anthem is not obligated to pay AIS's claims at issue in this litigation. That reason is

that the Provider Agreement included other standard requirements that AIS—like any other provider—had to satisfy for a claim to be payable by Anthem. These requirements included things like timeliness (AIS had to submit the claim within a specified time period), duplication (AIS could not submit duplicate claims), and coverage (the services had to be included in and covered by the member's benefits). By contract, Anthem had no obligation to pay any claim AIS submitted that was untimely, duplicative, or for services that were not covered (or failed any of the other requirements set forth in the Provider Agreement). Such claims were not and are not payable. But, again, AIS submitted deficient claims, which they improperly seek payment for in this litigation.

Stated simply, Anthem has no contractual obligation to pay the claims for which AIS appears to seek payment for either, or many times *both*, of the reasons outlined above.

AIS's failures to comply with the Provider Agreement were the subject of many months' worth of communications between AIS and Anthem that preceded AIS filing this suit against Anthem. *See, e.g.,* **Exhibit E**. Ultimately, of course, those efforts were unsuccessful in bringing the parties to a non-litigation resolution. That is because, as Anthem has since learned, AIS's business does not appear able to support the in-home limitation to which it agreed in the Provider Agreement (*i.e.,* that Anthem was only obligated to pay AIS for services provided when it refilled the member's pump in the home). As noted above, in acknowledgement of the amendment language AIS hired nursing personnel to go to members' homes, but after doing so AIS was unable to convince members to forgo visiting their physician and instead receive their refills from AIS at home. It was only after AIS realized that it had badly overestimated its ability to transition members and, therefore, had made a grave error in agreeing to the in-home refill exclusion, that it filed its lawsuit in an effort to force Anthem to change *its* member care model to match the needs

of AIS's business, namely, the ability to bill the lucrative Per Diem Claims even when the member remained on service with his/her physician and AIS could collect the per diem fees for performing zero services other than providing the medication. Only recently, after AIS realized that tactic had failed, did AIS pull its final lever and play its final card: purporting to immediately terminate all of its Provider Agreements with Anthem.

But AIS did not have the right to terminate the Provider Agreements immediately. The parties carefully drafted the Provider Agreements to balance either party's ability to terminate with Anthem's need to minimize disruption to its members' care. For this reason, either party was allowed to terminate the contract without cause, but that termination would only be effective after a 120-day period in which AIS would still be required to provide the contracted-for HIT services to Anthem's members who received pump refills at home while Anthem communicated with those members about whether they wish to transition to a different in-network HIT provider (this is called the "Continuation of Care Period"). With respect to AIS's purported termination here, continuity of care for members was so critical that the Provider Agreement only permitted AIS to *immediately* terminate the Agreement in extremely limited circumstances.

AIS purported to terminate the Provider Agreement here pursuant to one of those limited circumstances—Anthem's alleged "fraudulent and material misstatements." In reality, though, there was neither fraud nor a material misstatement. AIS has not even attempted to identify any alleged acts or statements which amount to fraud or a material misstatement, nor can it. AIS's unjustified, immediate termination constituted a breach of the Provider Agreements. Worse yet, by unjustifiably terminating the Provider Agreement with no notice, AIS inserted countless innocent Anthem members into the middle of its contractual dispute. Not only is AIS aware of the consequences of its actions but, sadly, it appears to be *counting on them* for leverage against

Anthem for its contract claims. Indeed, AIS's communication to members regarding *its* improper termination of the Provider Agreement specifically asks members to contact Anthem "and tell [Anthem] to do whatever it takes to keep AIS in network." *See* **Exhibit J**.

## GENERAL STATEMENT OF ANSWER AND DENIALS

Anthem denies each and every allegation of the Complaint not specifically admitted below, including all requests for relief. Anthem need not admit or deny legal conclusions or arguments. Although Anthem need not admit or deny legal conclusions or arguments, Anthem affirmatively denies that it has violated any contractual provision or applicable law and asserts that Plaintiff should be denied all of the relief it requests. Anthem does not repeat the headings set forth in the Complaint. To the extent any headings/characterizations require a response, and to the extent any headings contain any factual allegations, they are denied.

Anthem answers the individual allegations of the Complaint as follows:

## RESPONSE

1.      Denied.

2.      Denied.

3.      Denied. Anthem avers that it is not liable to AIS.

4.      Anthem lacks information sufficient to admit or deny the allegations in Paragraph 4 and therefore denies them.

5.      Anthem lacks information sufficient to admit or deny the allegations in Paragraph 5 and therefore denies them.

6.      Anthem admits that it contracted with AIS in November 2019 in the Anthem Blue Cross and Blue Shield Provider Agreement ("Provider Agreement"). Anthem further states that

on March 31, 2023, AIS improperly terminated the Agreement, effective immediately, in breach of the Agreement.  All remaining allegations are denied.

7.      The allegations in Paragraph 7 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself.  Anthem denies the allegations to the extent they are inconsistent with the document.

8.      The allegations in Paragraph 8 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself.  Anthem denies the allegations to the extent they are inconsistent with the document.

9.      The allegations in the first sentence of Paragraph 9 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself.  Anthem denies the allegations to the extent they are inconsistent with the document.  Anthem lacks information sufficient to admit or deny the remaining allegations in Paragraph 9 and therefore denies them.

10.      The allegations in Paragraph 10 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself.  Anthem denies the allegations to the extent they are inconsistent with the document.  With regard to the allegations in the first clause of the second sentence of Paragraph 10, Anthem lacks information sufficient to admit or deny that allegation and therefore denies it.  Anthem further avers that the parties' relationship is governed by the Provider Agreement, not anything approved by the National Home Infusion Association ("NHIA").  Anthem denies any remaining allegations in Paragraph 10.

11.      Anthem admits only that AIS billed Anthem for drugs and per diem claims, and that Anthem paid certain of these claims.  Anthem denies the remaining allegations in Paragraph 11.

12.      Denied.

13. Denied.

14. Anthem lacks information sufficient to admit or deny the allegations regarding the timing of Anthem's confrontation with AIS regarding its improper billing practices and therefore denies them. Anthem admits that it learned in 2020 that AIS was billing drugs and per diems where the medication was shipped to a treating physician's office independent from AIS, where the physician filled the patient's intrathecal pump with the medication, even though the Provider Agreement expressly required AIS to fill the intrathecal pump and perform any related services in the patient's home and did not obligate Anthem to pay AIS for services outside of a member's home. Anthem denies any remaining allegations in Paragraph 14.

15. Denied. To the extent Anthem refused to pay any per diem claim, it did so because the services were excluded by the Provider Agreement or the claim was otherwise improper.

16. Denied.

17. Denied

18. Denied.

19. The allegations in Paragraph 19 paraphrase or characterize the contents of a written document, AIS's Complaint, which speaks for itself. Anthem denies the allegations to the extent they are inconsistent with the document. Anthem further denies that AIS had no alternatives to litigation and that it is entitled to the relief sought.

20. Anthem lacks information sufficient to admit or deny the allegations in Paragraph 20 and therefore denies them.

21. Upon information and belief, admitted.

22. Anthem denies the allegations in the first sentence of Paragraph 22 as stated. Anthem denies the allegations in the second sentence of Paragraph 22 upon information and belief.

23.     Admitted.

24.     This paragraph sets forth a legal conclusion for which no response is required.

25.     This paragraph sets forth a legal conclusion for which no response is required.

26.     This paragraph sets forth a legal conclusion for which no response is required.

27.     This paragraph sets forth a legal conclusion for which no response is required.

28.     This paragraph sets forth a legal conclusion for which no response is required.

29.     Anthem lacks information sufficient to admit or deny the allegations in Paragraph 29 and therefore denies them.

30.     Denied.

31.     This paragraph sets forth a legal conclusion for which no response is required.

32.     This paragraph sets forth a legal conclusion for which no response is required.

33.     The allegations in Paragraph 19 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself.  Anthem denies the allegations to the extent they are inconsistent with the document.

34.     The first sentence of Paragraph 34 sets forth a legal conclusion for which no response is required.  Anthem denies the remaining allegations in this paragraph.

35.     Anthem lacks information sufficient to admit or deny the allegations in Paragraph 35 and therefore denies them.

36.     The allegations in Paragraph 36 and n.1 state conclusions of law regarding interpretation of the Provider Agreement to which no response is required.  To the extent a response is required, they are denied.  Anthem further states that the document cited for the definition of HIT in n.1 was not incorporated into the Provider Agreement.

37.     Anthem lacks information sufficient to admit or deny the allegations in Paragraph 37 and therefore denies them.

38.     Upon information and belief, admitted.

39.     Anthem denies that certain of the services that Plaintiff appears to address in the Complaint have provided "substantial or well-recognized" benefits to Anthem or its members. Anthem lacks information sufficient to admit or deny the remaining allegations in Paragraph 39 and n.2 and therefore denies them. Anthem further states that the document cited in n.2 was not incorporated into the Provider Agreement.

40.     Anthem lacks information sufficient to admit or deny the allegations in Paragraph 40 and therefore denies them.

41.     Anthem lacks information sufficient to admit or deny the allegations in Paragraph 41 and therefore denies them.

42.     Anthem lacks information sufficient to admit or deny the allegations in Paragraph 42 and n.3 and therefore denies them.

43.     Admitted.

44.     Admitted that AIS uses the term "infusion" to refer to the continuous release of AIS's medication as it proceeds through a patient's pump in its Complaint, and that the term is defined as such in the cited source. Anthem denies any remaining allegations in Paragraph 44.

45.     Denied.

46.     Anthem lacks information sufficient to admit or deny the allegations in Paragraph 46 and therefore denies them.

47.     Anthem lacks information sufficient to admit or deny the allegations in Paragraph 47 and therefore denies them.

48. Anthem lacks information sufficient to admit or deny the allegations in Paragraph 48 and n.4 and therefore denies them.

49. Anthem lacks information sufficient to admit or deny the allegations in Paragraph 49 and therefore denies them.

50. Anthem lacks information sufficient to admit or deny the allegations in Paragraph 50 and n.5 and therefore denies them.

51. Anthem lacks information sufficient to admit or deny the allegations in Paragraph 51 and therefore denies them.

52. Anthem lacks information sufficient to admit or deny the allegations in Paragraph 52 and therefore denies them.

53. Anthem lacks information sufficient to admit or deny the allegations in Paragraph 53 and therefore denies them. Anthem further denies that AIS provides any services to patients "for no additional charge." Anthem further denies that AIS is required to provide these services to patients whose pumps are filled by non-AIS physicians or nurses at locations other than the patient's home.

54. Anthem lacks information sufficient to admit or deny the allegations in Paragraph 54 and n.6 and therefore denies them. Anthem further denies that AIS is required to provide these services to patients whose pumps are filled by non-AIS physicians or nurses at locations other than the patient's home.

55. Anthem lacks information sufficient to admit or deny the allegations in Paragraph 55 and therefore denies them.

56. Anthem lacks information sufficient to admit or deny the allegations in Paragraph 56, but states that AIS nurses are required under the Provider Agreement to go to patients' homes

to fill the intrathecal pumps and administer the medication. Anthem denies any remaining allegations in Paragraph 56.

57. Anthem admits that the parties entered into the Provider Agreement on November 1, 2019, later amended on December 15, 2021. The remaining allegations in Paragraph 57 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself. Anthem denies the allegations to the extent they are inconsistent with the document. Anthem further states that on March 31, 2023, AIS improperly terminated the Agreement, effective immediately, in breach of the Agreement. All remaining allegations are denied.

58. The allegations in Paragraph 58 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required. Anthem denies the allegations to the extent they are inconsistent with the document or the law.

59. The allegations in Paragraph 59 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required. Anthem denies the allegations to the extent they are inconsistent with the document or the law. Anthem further denies that the Provider Agreement adopted or incorporated the NHIA's model. Anthem denies all remaining allegations in Paragraph 59.

60. Anthem admits that AIS has billed per diem charges to Anthem. The remaining allegations in Paragraph 60 and n.8 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself. Anthem denies the allegations to the extent they are inconsistent with the document. Anthem further denies that the Provider Agreement adopted or incorporated the NHIA's standards.

61.     The allegations in Paragraph 61 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the document or the law.

62.     The allegations in Paragraph 62 paraphrase or characterize the contents of written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the document or the law.

63.     The allegations in Paragraph 63 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the document or the law.

64.     The allegations in Paragraph 64 and n.9 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the document or the law.  Anthem further denies that the Provider Agreement adopted or incorporated the NHIA's standards.

65.     The allegations in Paragraph 65 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the document or the law.

66.     The allegations in Paragraph 66 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which

no response is required. Anthem denies the allegations to the extent they are inconsistent with the document or the law.

67. The allegations in Paragraph 67 and n.10 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required. Anthem denies the allegations to the extent they are inconsistent with the document or the law.

68. The allegations in Paragraph 68 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required. Anthem denies the allegations to the extent they are inconsistent with the document or the law.

69. The allegations in Paragraph 69 and n.11 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required. Anthem denies the allegations to the extent they are inconsistent with the document or the law.

70. Anthem lacks information sufficient to admit or deny the allegations in Paragraph 70 and Exhibit 1 and therefore denies them. Anthem further states that the allegations in the second sentence of Paragraph 70 paraphrase or characterize the contents of a written document, which speaks for itself. Anthem denies the allegations to the extent they are inconsistent with the document. Anthem further denies that the Provider Agreement adopted or incorporated the NHIA's standards.

71. The allegations in Paragraph 71 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which

no response is required. Anthem denies the allegations to the extent they are inconsistent with the document or the law.

72. Anthem admits the allegations in n.12. The remaining allegations in Paragraph 72 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required. Anthem denies the allegations to the extent they are inconsistent with the document or the law.

73. The allegations in Paragraph 73 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required. Anthem denies the allegations to the extent they are inconsistent with the document or the law. Anthem further denies that any law requires payment of the amounts sought by AIS.

74. Denied.

75. The allegations in Paragraph 75 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required. Anthem denies the allegations to the extent they are inconsistent with the document or the law.

76. Anthem admits that it paid certain of AIS's claims, although it did so in some instances based on incorrect or misleading coding by AIS. Anthem denies any remaining allegations in Paragraph 76.

77. Denied.

78. Denied.

79. Anthem admits only that it paid certain of AIS's claims. The remaining allegations in Paragraph 79 are denied.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Admitted, with the exception of the subheading, which is denied.

84.     Denied.

85.     The allegations in Paragraph 85 paraphrase or characterize the contents of a written document, a letter, which speaks for itself.  Anthem denies the allegations to the extent they are inconsistent with the document.  Anthem further denies that its guidance was inconsistent with the Provider Agreement or policies.

86.     The allegations in Paragraph 86 paraphrase or characterize the contents of a written document, a letter, which speaks for itself.  Anthem denies the allegations to the extent they are inconsistent with the document.

87.     Anthem lacks information sufficient to admit or deny the allegations in Paragraph 87 and therefore denies them.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.     Denied.

95.     Anthem admits that it paid certain of AIS's claims, although it did so in some instances based on incorrect or misleading coding by AIS.  Anthem denies any remaining allegations in Paragraph 95.

96.     Anthem admits that it notified AIS of improprieties in its billing, but denies that it did so abruptly.  Anthem denies any remaining allegations in Paragraph 96.

97.     Anthem admits that it conducted periodic reviews of certain claims, including per diem claims.  Anthem denies any other allegations in Paragraph 97.

98.     Anthem lacks information sufficient to admit or deny the allegations in Paragraph 98 and therefore denies them.  Anthem has not been served with a list of these claims.  Anthem further denies that the Provider Agreement adopted or incorporated the NHIA's standards.

99.     Anthem lacks information sufficient to admit or deny this allegation, and therefore denies it.

100.    Anthem lacks information sufficient to identify the meeting referred to in Paragraph 100 but admits that the parties met on multiple occasions since 2019 to discuss AIS's claim submission processes.  The remaining allegations in Paragraph 100 paraphrase or characterize the contents of written documents, which speak for themselves.  Anthem denies the allegations to the extent they are inconsistent with the documents.

101.    Anthem lacks information sufficient to admit or deny the allegations in Paragraph 101 and therefore denies them.  Anthem has not been served with a list of these claims.

102.    Anthem lacks information sufficient to admit or deny the allegations in Paragraph 102 and therefore denies them.  Anthem has not been served with a list of these claims.

103.    Denied.

104.    Denied.

105.     Denied.  Anthem further states that it did not deny properly filed claims for covered services under the Provider Agreement.

106.     Anthem admits only that it sent a letter to AIS on June 10, 2021, which speaks for itself.  Anthem denies that this was its first response to AIS's letter.

107.     The allegations in Paragraph 107 paraphrase or characterize the contents of a written document, a letter, which speaks for itself.  Anthem denies the allegations to the extent they are inconsistent with the document.  Anthem further denies that the letter included a new basis for denial of AIS's per diem claims.

108.     The allegations in Paragraph 108 paraphrase or characterize the contents of a written document, a letter, which speaks for itself.  Anthem denies the allegations to the extent they are inconsistent with the document.

109.     Denied.

110.     Denied.

111.     Anthem admits that AIS disputed generally Anthem's handling of its claims at various times.  Anthem denies the remaining allegations in Paragraph 111.

112.     Denied.  Anthem further avers that during this period, Anthem prepared an amendment to the Provider Agreement that further prohibited payment for services provided outside the home, e.g., a physician's office, and proposed it to AIS.  In response, AIS initially claimed that it was going to terminate the Provider Agreement but ultimately executed the amendment.

113.     Anthem admits that the parties amended the Provider Agreement effective December 15, 2021.  Anthem denies the remaining allegations in Paragraph 113 and states that the Provider Agreement only allowed AIS to bill the per diem in accordance with the Provider

Agreement, as amended.  If the pump was filled in a physician's office, AIS could not bill a per diem for the subsequent days under the express terms of the Provider Agreement, because the physician's office, not AIS, was responsible for the patient's ongoing care.

114.    Anthem admits that it placed AIS on prepayment review due to its failure to provide medical records upon request as required by the Provider Agreement.  Anthem denies the remaining allegations in Paragraph 114.

115.    Denied.

116.    Denied.

117.    Denied.

118.    The allegations in Paragraph 118 appear to refer to the contents of a written document which speaks for itself.  Anthem denies the allegations to the extent they are inconsistent with that document.  Further, Anthem denies that AIS's per diem claims were entirely proper and admits only that Anthem did not notice irregularities in billing based on the documentation provided by AIS.

119.    Denied.

120.    Denied.  Anthem paid AIS's properly billed per diem claims.

121.    The allegations in Paragraph 121 appear to paraphrase or characterize the contents of a written document which speaks for itself.  Anthem denies the allegations to the extent they are inconsistent with that document or to the extent the allegations in Paragraph 121 refer to another communication.  Anthem further denies that it is liable to AIS.

122.    Anthem admits that it reminded AIS that AIS could not bill the per diem for any days after a patient's pump was refilled if the refill occurred anywhere other than the home under

the plain language of the Provider Agreement and notified AIS that it was improperly billing per diems for excluded days. Anthem denies the remaining allegations in Paragraph 122.

123. Anthem admits that it sought to resolve the dispute amicably despite AIS's breaches but denies that it committed to enter into any renegotiated Provider Agreement. Anthem denies any remaining allegations in Paragraph 123.

124. Anthem denies that it promised any particular resolution, although it worked with AIS in good faith. Anthem lacks information sufficient to admit or deny the remaining allegations in Paragraph 124 and therefore denies them.

125. Admitted only that both parties communicated regarding the dispute. Anthem denies the remaining allegations in Paragraph 125.

126. Denied.

127. Denied.

128. The allegations in Paragraph 128 appear to refer to the contents of a written document, a letter, which speaks for itself. Anthem denies the allegations to the extent they are inconsistent with the document or to the extent the allegations in Paragraph 128 review to another communication.

129. Denied. Anthem had paid those per diem claims and never recouped them.

130. Denied.

131. Denied.

132. Denied.

133. Denied.

134. Denied.

135. Denied.

136.     Denied.

137.     Denied.

138.     Denied.  To the extent AIS has chosen to provide services that are prohibited under the terms of the Provider Agreement, rather than provide the services in a manner that complies with the Provider Agreement, Anthem cannot be held responsible.

139.     Anthem repeats and incorporates its responses to the allegations in Paragraphs 1 to 138 as if set forth fully herein.

140.     In response to the allegations in Paragraph 140, Anthem states that on March 31, 2023, AIS improperly terminated the Agreement, effective immediately, in breach of the Agreement.  All remaining allegations are denied.

141.     The allegations in Paragraph 141 state conclusions of law to which no response is required.  Further, Anthem denies these allegations.

142.     Anthem lacks information sufficient to admit or deny the allegations in Paragraph 142 and therefore denies them.

143.     The allegations in Paragraph 143 state conclusions of law to which no response is required.  Further, Anthem denies these allegations.

144.     The allegations in Paragraph 144 state conclusions of law to which no response is required.  Anthem further denies that it is required to process AIS's claims in accordance with NHIA's standards.

145.     The allegations in Paragraph 145 state conclusions of law to which no response is required.  Anthem further denies that it is required to process AIS's claims in accordance with NHIA's standards.

146.     The allegations in Paragraph 146 state conclusions of law to which no response is required.  Anthem further denies that it is required to process AIS's claims in accordance with NHIA's standards.

147.     The allegations in Paragraph 147 state conclusions of law to which no response is required.  Anthem further denies that it is required to process AIS's claims in accordance with NHIA's standards and denies that it has improperly denied AIS's claims.

148.     Denied.

149.     Denied.

150.     Denied.

151.     The allegations in Paragraph 151 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and states conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the document or the law.

152.     The allegations in Paragraph 152 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and states conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the document or the law.

153.     The allegations in Paragraph 153 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and states conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the document or the law.

154.     Paragraph 154 states conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the law.

155.     Denied.

156.     Denied.

157.     Denied.

158.     Denied.

159.     Anthem repeats and incorporates its responses to Paragraphs 1 to 158 as if set forth fully herein.

160.     Admitted.

161.     In response to the allegations in Paragraph 161, Anthem states that on March 31, 2023, AIS improperly terminated the Agreement, effective immediately, in breach of the Agreement.  All remaining allegations are denied.

162.     In response to the allegations in Paragraph 162, Anthem states that on March 31, 2023, AIS improperly terminated the Agreement, effective immediately, in breach of the Agreement.  All remaining allegations are denied.

163.     Anthem lacks information sufficient to admit or deny the allegations in Paragraph 163 and therefore denies them.

164.     The allegations in Paragraph 164 state conclusions of law to which no response is required.  Further, Anthem denies these allegations. Anthem further denies that it is required to process AIS's claims in accordance with NHIA's standards.

165.     The allegations in Paragraph 165 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the document or the law.  Anthem further denies that it is required to process AIS's claims in accordance with NHIA's standards.

166.     Denied.

167.     To the extent AIS alleges that it disputed the denials in accordance with the appropriate processes under the Provider Agreement, the allegations in Paragraph 167 paraphrase or characterize the contents of a written document, the Provider Agreement, which speaks for itself, and state conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the document or the law.  Anthem admits only that AIS objected in various forms to Anthem's handling of its claims.  The remaining allegations in Paragraph 167 are denied.

168.     The allegations in Paragraph 168 paraphrase or characterize the contents of a written document, which speaks for itself.  Anthem denies the allegations to the extent they are inconsistent with the document.

169.     Anthem denies that it refused to pay current and future per diem claims submitted in compliance with the Provider Agreement.  Anthem further states that the Provider Agreement excludes per diem claims for any members who had their pumps refilled at a location other than the member's home.  Anthem denies the remaining allegations in Paragraph 169.

170.     Admitted.

171.     Anthem lacks information sufficient to admit or deny the allegations in Paragraph 171 and therefore denies them.

172.     Denied.

173.     Anthem lacks information sufficient to admit or deny the allegations in Paragraph 173 and therefore denies them.

174.     Denied.

175.     Denied.

176.     Denied.

177.     Denied.

178.     Denied.

179.     Denied.  To the extent AIS has chosen to provide services that are prohibited under the terms of the Provider Agreement, rather than provide the services in a manner that complies with the Provider Agreement, Anthem cannot be held responsible.

180.     Denied.

181.     Denied.

182.     Denied.

183.     Anthem repeats and incorporates its answers to the allegations in Paragraphs 1 to 182 as if set forth fully herein.

184.     Paragraph 184 states conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the law.  Further, Anthem denies the allegations.

185.     Anthem lacks knowledge sufficient to admit or deny the allegations in Paragraph 185 and therefore denies them.  Anthem further denies that AIS is entitled to compensation unless payable under the terms of the Agreement.

186.     Denied.

187.     Denied.

188.     Denied.

189.     Anthem repeats and incorporates its answers to the allegations in Paragraphs 1 to 188 as if set forth fully herein.

190.     Paragraph 190 states conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the law.

191.     The allegations in Paragraph 191 paraphrase or characterize the contents of a written document, AIS's Complaint, which speaks for itself, and state conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the document or the law.  Anthem further states that on March 31, 2023, AIS improperly terminated the Agreement, effective immediately, in breach of the Agreement.  All remaining allegations are denied.

192.     The allegations in Paragraph 192 paraphrase or characterize the contents of a written document, AIS's Complaint, which speaks for itself, and state conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the document or the law.  Anthem further states that on March 31, 2023, AIS improperly terminated the Agreement, effective immediately, in breach of the Agreement.  All remaining allegations are denied.

193.     Paragraph 193 states conclusions of law to which no response is required.  Anthem denies the allegations to the extent they are inconsistent with the law.

194.     Anthem denies that AIS is entitled to any relief, including that requested in the section titled "Relief Requested."  Anthem further states that AIS is not entitled to attorneys' fees or costs under the Provider Agreement.

## AFFIRMATIVE AND OTHER DEFENSES

Anthem states as follows for its affirmative and other defenses to AIS's Complaint:

### FIRST DEFENSE
### (Failure to State a Claim)

The Complaint, and each cause of action thereof, fails to set forth facts sufficient to state a claim upon which relief may be granted against Anthem, and further fails to state facts sufficient to entitle AIS to the relief sought, or to any other relief from Anthem.

### SECOND DEFENSE
### (Failure to Mitigate Damages)

AIS's claims are barred, in whole or in part, to the extent that AIS failed to mitigate its alleged damages.

### THIRD DEFENSE
### (Liability of Third Parties)

AIS's claims are barred, in whole or in part, to the extent that AIS's alleged damages resulted from the acts or omissions of third parties over whom Anthem had neither control nor responsibility.  The liability of Anthem, if any, should be reduced in proportion to the conduct of other parties and non-parties to this action.

### FOURTH DEFENSE
### (Waiver, Laches, Estoppel)

AIS's claims are barred, in whole or in part, under the doctrines of waiver, laches, and/or estoppel.

### FIFTH DEFENSE
### (Unclean Hands)

AIS's claims are barred, in whole or in part, under the doctrine of unclean hands.

## SIXTH DEFENSE
### (Good Faith)

AIS's claims are barred, in whole or in part, because Anthem acted in good faith and without malice, and neither was grossly negligent nor willfully breached the Provider Agreement.

## SEVENTH DEFENSE
### (Set-Off)

Anthem is entitled to set off from any recovery any amount owed by AIS.

## EIGHTH DEFENSE
### (Contractual Limitations)

AIS's claims are barred to the extent it has failed to comply with the Provider Agreement, including provisions regarding timely filing, exhaustion of the appeals process, and coverage exclusions.

## NINTH DEFENSE
### (Statute of Limitations)

AIS's claims are barred to the extent they arose more than eighteen months prior to the filing of this Complaint, pursuant to Section 7.4 of the Provider Agreement.

## TENTH DEFENSE
### (ERISA)

AIS's claims related to services provided under ERISA health benefits plans are barred to the extent they are preempted by ERISA or AIS lacks constitutional or statutory standing.

## ELEVENTH DEFENSE
### (Additional Defenses)

Defendants reserve the right to assert additional affirmative or other defenses at such time and to such extent as warranted by discovery and the factual developments in this case.

## COUNTERCLAIM

### INTRODUCTION

1.      Defendant/Counterclaim Plaintiff Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Anthem") contracted with Plaintiff/Counterclaim Defendant Advanced Infusion Solutions, Inc. ("AIS")[5] for AIS to provide a specific set of services to Anthem members:  home infusion therapy ("HIT") services.  If AIS provided one of those contracted-for services and then properly submitted a claim to Anthem for payment, Anthem was to pay for it.  However, AIS has also billed hundreds of *improper* claims, which are not payable pursuant to the parties' Provider Agreement.

2.      AIS initiated this litigation ostensibly to challenge Anthem's denial of these claims, but in reality, it was AIS's next step in its effort to force Anthem to renegotiate the terms of the parties' relationship.  Specifically, AIS wants to be paid even if it does not provide services in the members' homes.  After realizing that Anthem was not going to renegotiate, AIS played its final card:  purporting to immediately terminate its Provider Agreements with Anthem.

3.      This improper and unjustified litigation tactic threw the care of Anthem's members, who are AIS's patients, into the middle of this dispute.  The Provider Agreements require a continuity of care period following termination so that members could continue to receive HIT services from AIS at in-network rates while determining whether to shift their care to another HIT provider in Anthem's network.

4.      Continuity of care for members is so critical that AIS was only permitted to *immediately* terminate the Provider Agreement in extremely limited circumstances.  AIS purported

---

[5] Although the contracting party is Advanced Infusion Solutions, Inc., AIS sued in the name of Bond Pharmacy, Inc., d/b/a AIS Healthcare.

to terminate the Provider Agreement here pursuant to one of those limited circumstances—Anthem's alleged "fraud and misrepresentation" to AIS.

5.      There was neither fraud nor a misrepresentation.  AIS has identified none, nor can it.

6.      Instead, AIS's purported immediate termination is, at best, a last-ditch effort to strong-arm Anthem into agreeing to renegotiate the Provider Agreement (which Anthem is unwilling to do).

7.      Regardless, AIS's conduct constituted a breach of the Provider Agreements it has long disregarded, one that has and will continue to harm Anthem, necessitating this Counterclaim.

<u>BACKGROUND</u>

A.      *Anthem Contracts with AIS for Home Infusion Therapy Services.*

8.      In 2019, AIS approached Anthem about contracting with Anthem to provide home infusion therapy ("HIT") services to Anthem's members.

9.      Anthem contracts with HIT providers to provide intrathecal infusion pump refills in the comfort of the member's home, along with in-home follow-up care.  Anthem separately contracts with physicians to provide similar services to members who prefer to receive those services at a physician's office rather than the home.

10.     AIS and Anthem ultimately entered into the Anthem Blue Cross Provider Agreement, effective November 1, 2019 (the "Provider Agreement") (**Exhibit F**).

11.     The Provider Agreement required AIS to refill members' pumps in the members' homes in exchange for the right to receive reimbursement from Anthem at the contractually agreed rate for the medication AIS uses to refill the members' pumps in their home ("Drug Claims") and

receive compensation for other services related to home infusion therapy on a per diem basis ("Per Diem Claims").

12. The Provider Agreement included exclusions, *i.e.*, services for which AIS agreed it would *not* receive payment from Anthem.

13. In particular, the Provider Agreement states that drugs ███████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

Exhibit F, PCS Attachment at 8 (emphasis added).

14. This language is not only consistent with the services AIS was contracted to provide – home infusion therapy – it also recognizes that if the member is treated in a physician's office, the physician can bill Anthem for the drugs the physician purchases to refill the member's pump in accordance with the physician's agreement with Anthem.

15. Additionally, the Provider Agreement made clear that ███████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████ *Id.* (emphasis in original).

16. The Provider Agreement also required AIS to follow certain standard claim submission procedures laid out in the Provider Agreement and Anthem's Provider Manual, including filing claims within a certain period, not submitting duplicate claims, and providing specific information along with its claims.

17.     Additionally, the Provider Agreement stated that ██████████████████████ ████████████████████████████████████ Provider Agreement, PCS Attachment at 1. HCPCS codes, or Healthcare Common Procedure Coding System codes, are a standardized alphanumeric coding system used for pricing medications.  Reimbursement of most medications is linked to the HCPCS code assigned to the drug.  NDC codes, short for National Drug Code, are unique 10-digit numbers that serve as universal product identifiers for human drugs in the United States and are often more specific than HCPCS codes.  Both are necessary for confirming that claims were billed correctly and for determining pricing, especially for medications that are a combination of several different drugs.

B.      *The Provider Agreement's Termination and Continuation of Care Provisions.*

18.     The Provider Agreement also included clear parameters for termination.  First, either party is permitted to terminate the Agreement ████████████████████████████ ████████████████████████████████████████████ Provider Agreement § 8.2.

19.     Second, a party may terminate the Provider Agreement if the other party ██████ ████████████████████████████████████████████ In the case of a termination for breach, the non-breaching party must ██████████████████████ ████████████████████████████████ at which point the breaching party has 30 days to cure the breach.  If the breach is not cured with 30 days, ████████████████ ████████████████████████████████████████████████ ████████████ Provider Agreement § 8.3.

20.     Third, AIS may terminate the Provider Agreement ████████████ upon satisfaction of one of three narrow, enumerated conditions: ████████████████████████████

███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████████████████████ Provider
Agreement § 8.4.2.

21.     Immediate termination is reserved for extraordinary circumstances, given the potential for significant impact on member care.

22.     If the Provider Agreement is terminated for any reason other than one of the enumerated grounds for immediate termination – even in the case of termination for breach – the Provider Agreement requires that AIS ██████████████████████████ during the continuation of care period (the "Continuation of Care Period").  Provider Agreement § 8.7.  The Continuation of Care Period not only allows Anthem to inform its members of other in-network HIT providers, it allows the members time to transition their care to the alternate, in-network providers, if they choose to do so.

C.      *AIS Agrees to an Amendment of the Provider Agreement.*

23.     Beginning in 2020, Anthem became aware of a series of issues with AIS's billing practices.

24.     AIS's claims increasingly suffered from billing errors requiring denial or adjustment under the terms of the Provider Agreement, such as filing claims within a certain period, not submitting duplicate claims, and providing specific information along with its claims.

25.     Anthem also learned that AIS had been coding the place of service on its Drug and Per Diem Claims as in-home (POS 12), when in fact AIS had shipped the drugs to physicians' offices for the physicians to refill the members' pumps.

26.     To resolve any purported confusion, Anthem proposed an amendment to the Provider Agreement in early 2021, which made even clearer that AIS was only entitled to payment from Anthem for Per Diem and Drug Claims if AIS filled members' pumps in their homes, consistent with the HIT model employed with Anthem's other HIT providers.

27.     In response, AIS served Anthem with a notice of termination under the Provider Agreement's termination-without-cause provision to try to force Anthem to agree to allow AIS to be paid even when it provides no in-home services.  When that did not work, AIS asked Anthem to extend the effective date of termination date because, while it intended to execute the amendment, it needed time to hire nurses who would provide in-home services to members required under both the Provider Agreement and the amendment.

28.     Ultimately, AIS executed the amendment to the Provider Agreement, effective December 15, 2021 (the "Amendment") (**Exhibit G**).

29.     The Amendment prohibited AIS from providing or seeking compensation for services that were provided by the physician or were the sort that would ordinarily be billed by the physician.

30.     The Amendment states: ██████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████ Amendment at 8.

31.     It further states: ████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

████████████████████████████████████

███████████████ *Id.* (emphasis in original).

32.     In other words, if AIS shipped drugs to a physician's office for a physician to refill the member's pump, AIS was not entitled to payment on **any** Per Diem Claims related to the infusion of that medication.  Rather, the physician assumed responsibility for any monitoring and follow-up care.  But if AIS refilled the pump in the member's home, becoming that member's direct provider, then it could bill Per Diem Claims.

33.     The Amendment incorporated the other terms of the Provider Agreement, including standard billing requirements and its termination and continuation of care provisions.

*D.     AIS Unlawfully Terminates the Provider Agreement, Effective Immediately.*

34.     Despite having agreed to provide and seek compensation for in-home services only, and even though the Amendment expressly stated that AIS was not entitled to reimbursement for any prohibited or excluded "services," AIS continued to seek reimbursement for excluded services after December 15, 2021.

35.     AIS also continued to submit untimely or otherwise deficient Drug and Per Diem Claims, which were not reimbursable under the Amended Agreement.

36.     While Anthem has paid in excess of $1,280,000 since March 2020 in Drug and Per Diem Claims to AIS over the course of the parties' relationship, and even though AIS was not entitled to compensation on the remaining claims, AIS filed suit in the present action.

37.     On Friday, March 31, 2023, without any prior notice, AIS sent Anthem what purported to be a notice of immediate termination of the Provider Agreement, effective March 31, 2023.  **Exhibit H**.

38.     The two-sentence letter stated that AIS "hereby terminates" the Provider Agreement "effective immediately based on Anthem's fraudulent and material misstatements," citing Section 8.4.2 of the Provider Agreement.  *Id*.

39.     AIS's termination letter failed to specify the nature of these alleged "misstatements," including when or to whom Anthem had allegedly made them or provide the document which contained the purported misstatements.

40.     Anthem has made no fraudulent or material misstatements in any document (or otherwise) to AIS or any third party, relating to the Provider Agreement or otherwise.  Therefore, AIS's termination of the Provider Agreement, effective immediately, is a breach of the Provider Agreement.  Rather, AIS's termination was properly ████████ pursuant to Section 8.2, and therefore, it is required to provide the Covered Services during the 120-day Continuation of Care Period, or until July 29, 2023.

41.     Anthem responded to AIS's letter on Monday, April 3, 2023.  **Exhibit I**.  In it, Anthem explained that AIS's termination was without cause and put the wellbeing of Anthem's members at risk.

42.     Since that time, Anthem has worked to communicate with its members regarding their options for HIT services moving forward to minimize the harm caused them by AIS's wrongful action.

43.     AIS's communication to the Anthem members regarding its termination of the Provider Agreement further shows that the termination was without proper justification and constitutes a breach.  *See* **Exhibit J**.  Not only does AIS inaccurately refer to its termination as "Anthem's decision," it also makes a pitch to the members to contact Anthem and tell it "to do whatever it takes to keep AIS in network."  *Id.*

44.     AIS's termination of the Provider Agreement is a breach of its obligations under the Provider Agreement and is causing serious and irreparable harm to Anthem.

## Count 1 (Breach of Contract)

45.     Anthem repeats and incorporates by reference the allegations in Paragraphs 1–44 above as if fully set forth herein.

46.     The Provider Agreement, as amended, is a valid and enforceable contract.

47.     The Provider Agreement prohibits AIS from terminating the Provider Agreement immediately absent a fraudulent or material misstatement by Anthem, a loss of necessary licensure, or bankruptcy by Anthem.

48.     Anthem has not made any fraudulent or material misstatements, lost any necessary licenses, or filed for bankruptcy or receivership.

49.     Therefore, the prerequisites for an immediate termination by AIS have not been satisfied.

50.     AIS did not serve Anthem with a written notice of breach, opportunity to cure, and notice of termination for breach.

51.     Therefore, AIS has not satisfied the prerequisites for termination for breach.

52.     Therefore, the only termination available to AIS is termination without cause under Section 8.2.

53.     AIS's purported immediate termination of the Provider Agreement is a material breach of the Agreement.

54.     As a result of AIS's material breaches of the Provider Agreement, Anthem has suffered, and continues to suffer, damages and harm.  For example, Anthem has had to conduct costly emergency outreach to affected members to explain their other in-network options and

respond to concerns from its members that AIS would overbill them at out-of-network rates for services occurring in the next week if they were unable to switch to another provider in time for their scheduled refill.

55.    AIS's unjustified and improper termination harms the health, wellbeing, and finances of its members and causes both reputational and monetary harm to Anthem.

## PRAYER FOR RELIEF

Anthem respectfully requests that this Court enter an award in its favor and against AIS, and grant the following relief:

a) enter judgment in favor of Anthem and against AIS based on AIS's material breaches of the Provider Agreement, in an amount to be determined according to proof;

b) award Anthem its attorneys' fees and costs;

c) award Anthem pre-judgment and post-judgment interest, and all other interest, on all monetary damages awarded to Anthem, as permitted by law;

d) award injunctive relief requiring AIS to provide the Covered Services in accordance with the Provider Agreement for the Continuation of Care Period; and

e) award such further relief that the Court deems just and proper.

Pursuant to Federal Rule of Civil Procedure 38, Anthem demands a trial by jury on all issues so triable.

Date: April 26, 2023

ANTHEM HEALTH PLANS OF
VIRGINIA, INC. D/B/A ANTHEM BLUE
CROSS AND BLUE SHIELD

*/s/ Michael E. Lacy*
Michael E. Lacy (VSB No. 48477)
Sarah E. Siu (VSB No. 94716)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
Telephone:  (804) 697-1326
Facsimile:  (804) 697-6061
michael.lacy@troutman.com
sarah.siu@troutman.com

Virginia Bell Flynn (VSB No. 79596)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
301 S. College Street, 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1509
Facsimile: (704) 998-4051
virginia.flynn@troutman.com

Callan G. Stein (*pro hac vice forthcoming*)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
125 High Street, 19th Floor
Boston, MA 02110
Telephone: (617) 204-5100
callan.stein@troutman.com

Harry J. Liberman (*pro hac vice
forthcoming*)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
875 Third Avenue
New York, NY 10022
Telephone: (202) 704-6000
harry.liberman@troutman.com

*Counsel for Defendant/Counterclaim
Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of April, 2023, a true and correct copy of the foregoing

Answer and Counterclaim was sent, via electronic and U.S. mail, to:

Paul Werner, Esq.
Imad Matini, Esq.
Amanda Witt, Esq.
Kathryn Ryan, Esq.
Sheppard, Mullin, Richter & Hampton LLP
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006
pwerner@sheppardmullin.com
imatini@sheppardmullin.com
awitt@sheppardmullin.com
katryan@sheppardmullin.com

*Counsel for Plaintiff Bond Pharmacy, Inc., d/b/a AIS Healthcare*

/s/ *Michael E. Lacy*_____
Michael E. Lacy