**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |
|---|---|
| **BOND PHARMACY, INC., d/b/a AIS HEALTHCARE,**  ) ) ) ) ) | |
| **Plaintiff-Counter Defendant,**  ) ) | |
| **v.**  ) ) | **Case No. 1:22-cv-01343-CMH-IDD** |
| **ANTHEM HEALTH PLANS OF VIRGINIA, INC., d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD,**  ) ) ) ) | |
| **Defendant-Counterclaimant.**  ) ) | |

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Plaintiff Bond Pharmacy, Inc., d/b/a AIS Healthcare ("AIS"), submits the following answer and affirmative defenses to Defendant Anthem Health Plans of Virginia, Inc., d/b/a Anthem Blue Cross and Blue Shield's ("Anthem's") Counterclaim, and states as follows:

## **COUNTERCLAIM**

## **INTRODUCTION**

1.      Defendant/Counterclaim Plaintiff Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Anthem") contracted with Plaintiff/Counterclaim Defendant Advanced Infusion Solutions, Inc. ("AIS")[5] for AIS to provide a specific set of services to Anthem members: home infusion therapy ("HIT") services. If AIS provided one of those contracted-for services and then properly submitted a claim to Anthem for payment,

---

[5] Although the contracting party is Advanced Infusion Solutions, Inc., AIS sued in the name of Bond Pharmacy, Inc., d/b/a AIS Healthcare.

-1-

Anthem was to pay for it. However, AIS has also billed hundreds of *improper* claims, which are not payable pursuant to the parties' Provider Agreement.

**ANSWER:** AIS admits it entered an agreement with Anthem ("Provider Agreement"). To the extent the allegations in Paragraph 1 of the Counterclaim derive from the Provider Agreement, the Provider Agreement speaks for itself, and AIS denies any characterization of its contents that is inconsistent with its text.  The remaining allegations in Paragraph 1 assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

2.      AIS initiated this litigation ostensibly to challenge Anthem's denial of these claims, but in reality, it was AIS's next step in its effort to force Anthem to renegotiate the terms of the parties' relationship. Specifically, AIS wants to be paid even if it does not provide services in the members' homes. After realizing that Anthem was not going to renegotiate, AIS played its final card: purporting to immediately terminate its Provider Agreements with Anthem.

**ANSWER:** AIS admits it filed a Complaint against Anthem in this matter.  The remaining allegations in Paragraph 2 assert legal conclusions to which no response is required. To the extent a response is deemed required, those allegations are denied.  To the extent the allegations in Paragraph 2 of the Counterclaim derive from documentary evidence, such documents speak for themselves.  AIS denies any characterization of their contents that is inconsistent with their text.  Except as specifically admitted, AIS denies the remaining allegations in Paragraph 2.

3.      This improper and unjustified litigation tactic threw the care of Anthem's members, who are AIS's patients, into the middle of this dispute. The Provider Agreements require a continuity of care period following termination so that members could continue to

receive HIT services from AIS at in-network rates while determining whether to shift their care

to another HIT provider in Anthem's network.

**ANSWER:** To the extent the allegations in Paragraph 3 of the Counterclaim derive from

the Provider Agreement, the Provider Agreement speaks for itself.  AIS denies any

characterization of its contents that is inconsistent with its text.  AIS denies the allegations in

Paragraph 3.

4.      Continuity of care for members is so critical that AIS was only permitted to

immediately terminate the Provider Agreement in extremely limited circumstances.  AIS

purported to terminate the Provider Agreement here pursuant to one of those limited

circumstances— Anthem's alleged "fraud and misrepresentation" to AIS.

**ANSWER:** The allegations in Paragraph 4 of the Counterclaim derive from documentary

evidence.  Such documents speak for themselves, and AIS denies any characterization of their

contents that is inconsistent with their text.  The remaining allegations in Paragraph 4 assert legal

conclusions to which no response is required.  To the extent a response is deemed required, those

allegations are denied.

5.      There was neither fraud nor a misrepresentation. AIS has identified none, nor can

it.

**ANSWER:** To the extent the allegations in Paragraph 5 of the Counterclaim derive from

documentary evidence, such documents speak for themselves.  AIS denies any characterization

of their contents that is inconsistent with their text.  The remaining allegations in Paragraph 5

assert legal conclusions to which no response is required.  To the extent a response is deemed

required, those allegations are denied.

6.      Instead, AIS's purported immediate termination is, at best, a last-ditch effort to strong-arm Anthem into agreeing to renegotiate the Provider Agreement (which Anthem is unwilling to do).

**ANSWER:** AIS denies the allegations in Paragraph 6 of the Counterclaim.

7.      Regardless, AIS's conduct constituted a breach of the Provider Agreements it has long disregarded, one that has and will continue to harm Anthem, necessitating this Counterclaim.

**ANSWER:** The allegations in Paragraph 7 of the Counterclaim assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

## BACKGROUND

A.      *Anthem Contracts with AIS for Home Infusion Therapy Services.*

8.      In 2019, AIS approached Anthem about contracting with Anthem to provide home infusion therapy ("HIT") services to Anthem's members.

**ANSWER:** The allegations in Paragraph 8 of the Counterclaim derive from the Provider Agreement, which speaks for itself, and AIS denies any characterization of its contents that is inconsistent with its text.  AIS denies the remaining allegations in Paragraph 8.

9.      Anthem contracts with HIT providers to provide intrathecal infusion pump refills in the comfort of the member's home, along with in-home follow-up care. Anthem separately contracts with physicians to provide similar services to members who prefer to receive those services at a physician's office rather than the home.

**ANSWER:** AIS lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Counterclaim, and therefore denies those allegations.

10.     AIS and Anthem ultimately entered into the Anthem Blue Cross Provider Agreement, effective November 1, 2019 (the "Provider Agreement") (**Exhibit F**).

**ANSWER:** The allegations in Paragraph 10 of the Counterclaim derive from the Provider Agreement, which speaks for itself.  AIS denies any characterization of its contents that is inconsistent with its text.  AIS denies the remaining allegations in Paragraph 10.

11.     The Provider Agreement required AIS to refill members' pumps in the members' homes in exchange for the right to receive reimbursement from Anthem at the contractually agreed rate for the medication AIS uses to refill the members' pumps in their home ("Drug Claims") and receive compensation for other services related to home infusion therapy on a per diem basis ("Per Diem Claims").

**ANSWER:** The allegations in Paragraph 11 of the Counterclaim derive from the Provider Agreement, which speaks for itself.  AIS denies any characterization of its contents that is inconsistent with its text.  Additionally, the allegations in Paragraph 11 assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.  AIS denies the remaining allegations in Paragraph 11.

12.     The Provider Agreement included exclusions, *i.e.*, services for which AIS agreed it would *not* receive payment from Anthem.

**ANSWER:** The allegations in Paragraph 12 of the Counterclaim derive from the Provider Agreement, which speaks for itself.  AIS denies any characterization of its contents that is inconsistent with its text.  Additionally, the allegations in Paragraph 12 assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.  AIS denies the remaining allegations in Paragraph 12.

13.     In particular, the Provider Agreement states that drugs "shipped by [AIS] to a physician's office, hospital, or any setting other than the home or Ambulatory Infusion Suite [a place of service operated and staffed by the HIT provider] are not payable under this Agreement." Exhibit F, PCS Attachment at 8 (emphasis added).

**ANSWER:** The allegations in Paragraph 13 of the Counterclaim derive from the Provider Agreement, which speaks for itself.  AIS denies any characterization of its contents that is inconsistent with its text.

14.     This language is not only consistent with the services AIS was contracted to provide – home infusion therapy – it also recognizes that if the member is treated in a physician's office, the physician can bill Anthem for the drugs the physician purchases to refill the member's pump in accordance with the physician's agreement with Anthem.

**ANSWER:** The Paragraph 14 of the Counterclaim derive from the Provider Agreement, which speaks for itself, and AIS denies any characterization of its contents that is inconsistent with its text.  Additionally, the allegations in Paragraph 14 assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied. AIS denies the remaining allegations in Paragraph 14.

15.     Additionally, the Provider Agreement made clear that "it is prohibited for *[AIS] to render services in a place other than the Home or Ambulatory Infusion Suite. Providing services at any place other than the Home or Ambulatory Infusion Suite may result in termination of a Provider's Agreement.* Therefore, under this Agreement, payments will not be made to [AIS] on days a member receives services in a physician's office." *Id*. (emphasis in original).

**ANSWER:** The allegations in Paragraph 15 of the Counterclaim derive from the Provider Agreement, which speaks for itself.  AIS denies any characterization of its contents that is inconsistent with its text.

16.      The Provider Agreement also required AIS to follow certain standard claim submission procedures laid out in the Provider Agreement and Anthem's Provider Manual, including filing claims within a certain period, not submitting duplicate claims, and providing specific information along with its claims.

**ANSWER:** To the extent the allegations in Paragraph 16 of the Counterclaim derive from the Provider Agreement, the Provider Agreement speaks for itself.  AIS denies any characterization of its contents that is inconsistent with its text.  Additionally, the allegations in Paragraph 16 assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

17.      Additionally, the Provider Agreement stated that "[a]ll Claims must include NDC codes, HCPCS code and [a] description of drug." Provider Agreement, PCS Attachment at 1. HCPCS codes, or Healthcare Common Procedure Coding System codes, are a standardized alphanumeric coding system used for pricing medications. Reimbursement of most medications is linked to the HCPCS code assigned to the drug. NDC codes, short for National Drug Code, are unique 10-digit numbers that serve as universal product identifiers for human drugs in the United States and are often more specific than HCPCS codes. Both are necessary for confirming that claims were billed correctly and for determining pricing, especially for medications that are a combination of several different drugs.

**ANSWER:** The allegations in Paragraph 17 of the Counterclaim derive from documentary evidence.  Such documents speak for themselves, and AIS denies any

characterization of their contents that is inconsistent with their text. Additionally, the allegations in Paragraph 17 assert legal conclusions to which no response is required. To the extent a response is deemed required, those allegations are denied.

B.     *The Provider Agreement's Termination and Continuation of Care Provisions.*

18.     The Provider Agreement also included clear parameters for termination. First, either party is permitted to terminate the Agreement "without cause" – for any reason – "at any time by giving at least 120 days prior written notice of termination to the other party." Provider Agreement § 8.2.

**ANSWER:** The allegations in Paragraph 18 of the Counterclaim derive from the Provider Agreement, which speaks for itself. AIS denies any characterization of its contents that is inconsistent with its text. Additionally, the allegations in Paragraph 18 assert legal conclusions to which no response is required. To the extent a response is deemed required, those allegations are denied.

19.     Second, a party may terminate the Provider Agreement if the other party "fails to comply with or perform when due any material term or condition of this Agreement." In the case of a termination for breach, the non-breaching party must "notify the breaching party of its breach in writing stating the specific nature of the material breach," at which point the breaching party has 30 days to cure the breach. If the breach is not cured with 30 days, "the non-breaching party may terminate [the] Agreement," effective "no sooner than sixty (60) days after such notice of termination." Provider Agreement § 8.3.

**ANSWER:** The allegations in Paragraph 19 of the Counterclaim derive from the Provider Agreement, which speaks for itself. AIS denies any characterization of its contents that is inconsistent with its text. Additionally, the allegations in Paragraph 19 assert legal

conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

20.     Third, AIS may terminate the Provider Agreement "immediately" upon satisfaction of one of three narrow, enumerated conditions: 1) "Anthem commits any act or conduct for which its license(s) . . . necessary for business operations are lost . . ."; 2) "Anthem commits fraud or makes any material misstatements or omissions on any documents related to this Agreement which it submits to Provider or to a third party;" or 3) "Anthem files for bankruptcy . . . ." Provider Agreement § 8.4.2.

**ANSWER:** The allegations in Paragraph 20 of the Counterclaim derive from the Provider Agreement, which speaks for itself.  AIS denies any characterization of its contents that is inconsistent with its text.  Additionally, the allegations in Paragraph 20 assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

21.     Immediate termination is reserved for extraordinary circumstances, given the potential for significant impact on member care.

**ANSWER:** The allegations in Paragraph 21 of the Counterclaim assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.  Additionally, to the extent the allegations in Paragraph 21 derive from the Provider Agreement, the Provider Agreement speaks for itself, and AIS denies any characterization of its contents that is inconsistent with its text.

22.     If the Provider Agreement is terminated for any reason other than one of the enumerated grounds for immediate termination – even in the case of termination for breach – the Provider Agreement requires that AIS "continue to provide Covered Services" during the

continuation of care period (the "Continuation of Care Period"). Provider Agreement § 8.7. The Continuation of Care Period not only allows Anthem to inform its members of other in-network HIT providers, it allows the members time to transition their care to the alternate, in-network providers, if they choose to do so.

**ANSWER:** To the extent the allegations in Paragraph 22 of the Counterclaim derive from the Provider Agreement, the Provider Agreement speaks for itself.  AIS denies any characterization of its contents that is inconsistent with its text.  Additionally, the allegations in Paragraph 22 assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

C.      *AIS Agrees to an Amendment of the Provider Agreement.*

23.     Beginning in 2020, Anthem became aware of a series of issues with AIS's billing practices.

**ANSWER:** AIS lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Counterclaim, and therefore denies those allegations. AIS further denies all allegations in Paragraph 23 that are based on information allegedly known to Anthem.

24.     AIS's claims increasingly suffered from billing errors requiring denial or adjustment under the terms of the Provider Agreement, such as filing claims within a certain period, not submitting duplicate claims, and providing specific information along with its claims.

**ANSWER:** AIS denies the allegations in Paragraph 24 of the Counterclaim.

25.     Anthem also learned that AIS had been coding the place of service on its Drug and Per Diem Claims as in-home (POS 12), when in fact AIS had shipped the drugs to physicians' offices for the physicians to refill the members' pumps.

**ANSWER:** AIS denies the allegations in Paragraph 25 of the Counterclaim.  AIS further denies all allegations in Paragraph 25 that are based on information allegedly known to Anthem.

26.     To resolve any purported confusion, Anthem proposed an amendment to the Provider Agreement in early 2021, which made even clearer that AIS was only entitled to payment from Anthem for Per Diem and Drug Claims if AIS filled members' pumps in their homes, consistent with the HIT model employed with Anthem's other HIT providers.

**ANSWER:** To the extent the allegations in Paragraph 26 derive from documentary evidence, such documents speak for themselves.  AIS denies any characterization of their contents that is inconsistent with their text.  AIS denies the allegations in Paragraph 26.

27.     In response, AIS served Anthem with a notice of termination under the Provider Agreement's termination-without-cause provision to try to force Anthem to agree to allow AIS to be paid even when it provides no in-home services. When that did not work, AIS asked Anthem to extend the effective date of termination date because, while it intended to execute the amendment, it needed time to hire nurses who would provide in-home services to members required under both the Provider Agreement and the amendment.

**ANSWER:** To the extent the allegations in Paragraph 27 of the Counterclaim derive from documentary evidence, such documents speak for themselves.  AIS denies any characterization of their contents that is inconsistent with their text.  AIS denies the allegations in Paragraph 27 of the Counterclaim.

28.     Ultimately, AIS executed the amendment to the Provider Agreement, effective December 15, 2021 (the "Amendment") (**Exhibit G**).

**ANSWER:** AIS admits the parties executed an amendment to the Provider Agreement, effective December 15, 2021 (the "Amendment").  To the extent the allegations in Paragraph 28

of the Counterclaim derive from the Amendment, the Amendment speaks for itself, and AIS denies any characterization of its contents that is inconsistent with its text.

29.     The Amendment prohibited AIS from providing or seeking compensation for services that were provided by the physician or were the sort that would ordinarily be billed by the physician.

**ANSWER:** The allegations in Paragraph 29 of the Counterclaim derive from the Amendment, which speaks for itself.  AIS denies any characterization of its contents that is inconsistent with its text.  Additionally, the allegations in Paragraph 29 assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

30.     The Amendment states: "If the drug therapy was refilled or administered in a Place of Service other than Home, no per diems are ever payable for any date associated with the drug therapy." Amendment at 8.

**ANSWER:** The allegations in Paragraph 30 of the Counterclaim derive from the Amendment, which speaks for itself.  AIS denies any characterization of its contents that is inconsistent with its text.

31.     It further states: "Pharmaceuticals shipped by [AIS] to a physician's office, hospital, or any setting other than the Home are not payable under this Agreement. Under this Agreement, it is prohibited for *[AIS] to render services in a place other than the Home or bill a per diem when the drug was administered in a setting other than Home. Providing services at any place other than the Home may result in termination of Provider's Agreement.* Therefore, under this Agreement, payments will not be made to [AIS] on days a member receives services in a physician's office." *Id*. (emphasis in original).

-12-

**ANSWER:** The allegations in Paragraph 31 of the Counterclaim derive from the Amendment, which speaks for itself.  AIS denies any characterization of its contents that is inconsistent with its text.

32.     In other words, if AIS shipped drugs to a physician's office for a physician to refill the member's pump, AIS was not entitled to payment on ***any*** Per Diem Claims related to the infusion of that medication. Rather, the physician assumed responsibility for any monitoring and follow-up care. But if AIS refilled the pump in the member's home, becoming that member's direct provider, then it could bill Per Diem Claims.

**ANSWER:** The allegations in Paragraph 32 of the Counterclaim assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.  Additionally, the allegations in Paragraph 32 derive from the Amendment, which speaks for itself.  AIS denies any characterization of its contents that is inconsistent with its text.

33.     The Amendment incorporated the other terms of the Provider Agreement, including standard billing requirements and its termination and continuation of care provisions.

**ANSWER:** The allegations in Paragraph 33 of the Counterclaim derive from documentary evidence.  Such documents speak for themselves, and AIS denies any characterization of their contents that is inconsistent with their texts.  Additionally, the allegations in Paragraph 33 assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

D.     *AIS Unlawfully Terminates the Provider Agreement, Effective Immediately.*

34.     Despite having agreed to provide and seek compensation for in-home services only, and even though the Amendment expressly stated that AIS was not entitled to

reimbursement for any prohibited or excluded "services," AIS continued to seek reimbursement for excluded services after December 15, 2021.

**ANSWER:** The allegations in Paragraph 34 of the Counterclaim derive from the Amendment, which speaks for itself, and AIS denies any characterization of its contents that is inconsistent with its text. Additionally, the allegations in Paragraph 34 assert legal conclusions to which no response is required. To the extent a response is deemed required, those allegations are denied. AIS denies the remaining allegations in Paragraph 34.

35.     AIS also continued to submit untimely or otherwise deficient Drug and Per Diem Claims, which were not reimbursable under the Amended Agreement.

**ANSWER:** The allegations in Paragraph 35 of the Counterclaim assert legal conclusions to which no response is required. To the extent a response is deemed required, those allegations are denied.

36.     While Anthem has paid in excess of $1,280,000 since March 2020 in Drug and Per Diem Claims to AIS over the course of the parties' relationship, and even though AIS was not entitled to compensation on the remaining claims, AIS filed suit in the present action.

**ANSWER:** AIS lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first clause of Paragraph 36 of the Counterclaim, and therefore denies those allegations. To the extent the allegations in Paragraph 36 derive from documentary evidence, such documents speak for themselves, and AIS denies any characterization of their contents that is inconsistent with their text. The remaining allegations in Paragraph 36 assert legal conclusions to which no response is required. To the extent a response is deemed required, those allegations are denied.

37.     On Friday, March 31, 2023, without any prior notice, AIS sent Anthem what purported to be a notice of immediate termination of the Provider Agreement, effective March 31, 2023. **Exhibit H**.

**ANSWER:** To the extent the allegations in Paragraph 37 of the Counterclaim derive from documentary evidence, such documents speak for themselves.  AIS denies any characterization of their contents that is inconsistent with their text.  AIS denies the remaining allegations in Paragraph 37.

38.     The two-sentence letter stated that AIS "hereby terminates" the Provider Agreement "effective immediately based on Anthem's fraudulent and material misstatements," citing Section 8.4.2 of the Provider Agreement. *Id*.

**ANSWER:** The allegations in Paragraph 38 of the Counterclaim derive from documentary evidence.  Such documents speak for themselves, and AIS denies any characterization of their contents that is inconsistent with their text.

39.     AIS's termination letter failed to specify the nature of these alleged "misstatements," including when or to whom Anthem had allegedly made them or provide the document which contained the purported misstatements.

**ANSWER:** The allegations in Paragraph 39 of the Counterclaim derive from documentary evidence.  Such documents speak for themselves, and AIS denies any characterization of their contents that is inconsistent with their text.

40.     Anthem has made no fraudulent or material misstatements in any document (or otherwise) to AIS or any third party, relating to the Provider Agreement or otherwise. Therefore, AIS's termination of the Provider Agreement, effective immediately, is a breach of the Provider Agreement. Rather, AIS's termination was properly "without cause" pursuant to Section 8.2, and

therefore, it is required to provide the Covered Services during the 120-day Continuation of Care Period, or until July 29, 2023.

**ANSWER:** The allegations in Paragraph 40 of the Counterclaim assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.  To the extent the allegations in Paragraph 40 derive from documentary evidence, such documents for themselves, and AIS denies any characterization of their contents that is inconsistent with their text.

41.      Anthem responded to AIS's letter on Monday, April 3, 2023. **Exhibit I**. In it, Anthem explained that AIS's termination was without cause and put the wellbeing of Anthem's members at risk.

**ANSWER:** The allegations in Paragraph 41 of the Counterclaim derive from documentary evidence.  Such documents speak for themselves, and AIS denies any characterization of their contents that is inconsistent with their text.  AIS denies the allegations in Paragraph 41 of the Counterclaim.

42.      Since that time, Anthem has worked to communicate with its members regarding their options for HIT services moving forward to minimize the harm caused them by AIS's wrongful action.

**ANSWER:** AIS lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Counterclaim, and therefore denies those allegations.

43.      AIS's communication to the Anthem members regarding its termination of the Provider Agreement further shows that the termination was without proper justification and constitutes a breach. *See* **Exhibit J**. Not only does AIS inaccurately refer to its termination as

"Anthem's decision," it also makes a pitch to the members to contact Anthem and tell it "to do whatever it takes to keep AIS in network." *Id.*

**ANSWER:** To the extent the allegations in Paragraph 43 derive from documentary evidence, such documents speak for themselves, and AIS denies any characterization of their contents that is inconsistent with their text. The remaining allegations in Paragraph 43 assert legal conclusions to which no response is required. To the extent a response is deemed required, those allegations are denied.

44.     AIS's termination of the Provider Agreement is a breach of its obligations under the Provider Agreement and is causing serious and irreparable harm to Anthem.

**ANSWER:** The allegations in Paragraph 44 of the Counterclaim assert legal conclusions to which no response is required. To the extent a response is deemed required, those allegations are denied.

<u>**COUNT I**</u>

<u>**(BREACH OF CONTRACT)**</u>

45.     Anthem repeats and incorporates by reference the allegations in Paragraphs 1–44 above as if fully set forth herein.

**ANSWER:** AIS re-affirms and incorporates by reference its answers to Paragraphs 1 through 44 of this Answer in response to Paragraph 45 of the Counterclaim.

46.     The Provider Agreement, as amended, is a valid and enforceable contract.

**ANSWER:** The allegations in Paragraph 46 of the Counterclaim assert legal conclusions to which no response is required. To the extent a response is required, AIS denies the allegations in Paragraph 46.

47.     The Provider Agreement prohibits AIS from terminating the Provider Agreement immediately absent a fraudulent or material misstatement by Anthem, a loss of necessary licensure, or bankruptcy by Anthem.

**ANSWER:** The allegations in Paragraph 47 of the Counterclaim derive from the Provider Agreement, which speaks for itself.  AIS denies any characterization of its contents that is inconsistent with its text.  Additionally, the allegations in Paragraph 47 assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

48.     Anthem has not made any fraudulent or material misstatements, lost any necessary licenses, or filed for bankruptcy or receivership.

**ANSWER:** The allegations in Paragraph 48 of the Counterclaim assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

49.     Therefore, the prerequisites for an immediate termination by AIS have not been satisfied.

**ANSWER:** The allegations in Paragraph 49 of the Counterclaim assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

50.     AIS did not serve Anthem with a written notice of breach, opportunity to cure, and notice of termination for breach.

**ANSWER:** The allegations in Paragraph 50 of the Counterclaim assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

51.     Therefore, AIS has not satisfied the prerequisites for termination for breach.

**ANSWER:** The allegations in Paragraph 51 of the Counterclaim assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

52.     Therefore, the only termination available to AIS is termination without cause under Section 8.2.

**ANSWER:** The allegations in Paragraph 52 of the Counterclaim assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

53.     AIS's purported immediate termination of the Provider Agreement is a material breach of the Agreement.

**ANSWER:** The allegations in Paragraph 53 of the Counterclaim assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations are denied.

54.     As a result of AIS's material breaches of the Provider Agreement, Anthem has suffered, and continues to suffer, damages and harm. For example, Anthem has had to conduct costly emergency outreach to affected members to explain their other in-network options and respond to concerns from its members that AIS would overbill them at out-of-network rates for services occurring in the next week if they were unable to switch to another provider in time for their scheduled refill.

**ANSWER:** The allegations in Paragraph 54 of the Counterclaim assert legal conclusions to which no response is required.  To the extent a response is deemed required, those allegations

are denied.  Additionally, AIS lacks information or knowledge sufficient to form a belief as to

the truth of the remaining allegations in Paragraph 54, and therefore denies those allegations.

55.     AIS's unjustified and improper termination harms the health, wellbeing, and

finances of its members and causes both reputational and monetary harm to Anthem.

**ANSWER:** The allegations in Paragraph 55 of the Counterclaim assert legal conclusions

to which no response is required.  To the extent a response is deemed required, those allegations

are denied.

### PRAYER FOR RELIEF

a)     Anthem respectfully requests that this Court enter an award in its favor and

against AIS, and grant the following relief:

b)     enter judgment in favor of Anthem and against AIS based on AIS's material

breaches of the Provider Agreement, in an amount to be determined according to proof;

c)     award Anthem its attorneys' fees and costs;

d)     award Anthem pre-judgment and post-judgment interest, and all other interest, on

all monetary damages awarded to Anthem, as permitted by law;

e)     award injunctive relief requiring AIS to provide the Covered Services in

accordance with the Provider Agreement for the Continuation of Care Period; and

f)     award such further relief that the Court deems just and proper.

**ANSWER:**  AIS denies the Prayer for Relief in its entirety.  AIS denies Anthem is

entitled to any damages or relief requested in the Prayer for Relief of the Counterclaim.  AIS

further states it is entitled to attorney's fees and costs of this case and all other relief as the Court

may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Anthem demands a trial by jury on all issues so triable.

**ANSWER:** AIS admits that the Counterclaim states that Anthem requests a trial by jury.

## GENERAL DENIAL

AIS denies all allegations in the Counterclaim that are not specifically admitted or denied above.  AIS includes Anthem's headings and footnotes for reference only, and denies any allegations contained therein.

## AFFIRMATIVE DEFENSES

1.      Anthem's Counterclaim fails to state valid causes of action for which relief can be granted.

2.      Anthem's Counterclaim is barred by the doctrine of unclean hands.

3.      Anthem's Counterclaim is barred by the doctrines of waiver, estoppel, and/or other variants of estoppel as applicable.

4.      Anthem's Counterclaim is barred by the Provider Agreement and any amendment or modification thereto.

5.      Anthem's Counterclaim is barred because Anthem has suffered no actual injury.

6.      Anthem's Counterclaim is barred because AIS is not the proximate or legal cause of Anthem's injuries.

7.      Anthem's Counterclaim is barred in whole or in part to the extent Anthem is seeking to recover damages that are speculative in nature.

8.      Anthem's Counterclaim is barred because AIS's actions were justified.

9.      Anthem's Counterclaim is barred in whole or in part because Anthem's actions are in violation of public policy.

AIS reserves the right to rely on or assert other defenses that may become available or apparent throughout the course of this action.

## **PRAYER FOR RELIEF**

AIS prays for judgment against Anthem's Counterclaim as follows:

1.      For an order dismissing the Counterclaim with prejudice;

2.      For judgment in favor of AIS on Anthem's Counterclaim;

3.      For an award of attorneys' fees and costs; and

4.      Such other and further relief as this Court may deem just and proper.

Dated:  July 31, 2023

Respectfully submitted,

By:_____
Paul Werner
Imad Matini
Sheppard, Mullin, Richter & Hampton LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
Telephone: 202-747-1931
Facsimile: 202-747-3817
pwerner@sheppardmullin.com
imatini@sheppardmullin.com

*Attorneys for Plaintiff/ Counter-Defendant AIS*

-22-