IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **BOND PHARMACY, INC., d/b/a AIS HEALTHCARE,**<br><br>　　　**Plaintiff,**<br><br>v.<br><br>**ANTHEM HEALTH PLANS OF VIRGINIA, INC., d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD,**<br><br>　　　**Defendant.** | **Civil Action No. 1:22-cv-01343-CMH-IDD** |

**MEMORANDUM OF LAW IN SUPPORT OF
ANTHEM HEALTH PLANS OF VIRGINIA, INC.'S
MOTION FOR PROTECTIVE ORDER QUASHING
BOND PHARMACY'S DEPOSITION NOTICE TO GAIL BOUDREAUX**

**TABLE OF CONTENTS**

*Page*

**INTRODUCTION** ............................................................................................................... 1

**FACTUAL AND PROCEDURAL BACKGROUND** ............................................................ 2

**ARGUMENT** ....................................................................................................................... 5

I. THE COURT SHOULD QUASH AIS'S DEPOSITION NOTICE BECAUSE IT IS SUBSTANTIVELY IMPROPER AND INTERPOSED SOLELY FOR PURPOSES OF HARASSMENT. ....................................................................... 5

    A. AIS has not and cannot justify deposing Ms. Boudreaux, an apex executive of a non-party. ........................................................................ 5

        i. Ms. Boudreaux has no unique or special knowledge. ................ 6

        ii. AIS did not even pursue, much less exhaust, other, less burdensome avenues for obtaining information. ....................... 9

II. AIS'S DEPOSITION NOTICE IS PROCEDURALLY IMPROPER BECAUSE IT IS UNTIMELY AND AIS CANNOT COMPEL A NON-PARTY WITNESS TO ATTEND A DEPOSITION VIA NOTICE; IT MUST SERVE A SUBPOENA. ........... 10

**CONCLUSION** ................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ike-Ezunagu v. Deco, Inc.*,
   No. 09cv526, 2010 WL 4822511 (D. Md. Nov. 22, 2010)..........................................................11

*JTH Tax, Inc. v. Aime*,
   No. 2:16CV279, 2016 WL 9223926 (E.D. Va. Dec. 13, 2016)...................................................6

*Kendrick v. Carter Bank & Trust*,
   No. 4:19-cv-00047, 2023 WL 3550112 (W.D. Va. May 18, 2023)............................................5

*Performance Sales & Mktg. LLC v. Lowe's Cos.*,
   No. 5:07-CV-00140-RLV-DLH, 2012 WL 4061680 (W.D.N.C. Sep. 14,
   2012) ..................................................................................................................................5, 6, 7

*Reese v. United States,*
   No. 1:12-cr-337, 2017 WL 3016822 (M.D.N.C. July 14, 2017) ................................................6

*RLI Ins. Co. v. Nexus Servs., Inc.*,
   No. 5:18-CV-00066, 2020 WL 2311668 (W.D. Va. May 8, 2020).........................5, 6, 7, 9, 10

*Smithfield Bus. Park, LLC v. SLR Int'l Corp.*,
   No. 5:12-CV-282-F, 2014 WL 547078 (E.D.N.C. Feb. 10, 2014) ............................................9

**Other Authorities**

Fed. R. Civ. P. 26.............................................................................................................................5

Fed. R. Civ. P. 30...........................................................................................................................10

Fed. R. Civ. P. 45......................................................................................................................2, 10

Local Civ. R. 30.......................................................................................................................10, 11

Local Civ. R. 45.......................................................................................................................10, 11

## INTRODUCTION

At 11:15 p.m. EST on September 1—*i.e.*, 45 minutes before midnight on the Friday evening before Labor Day weekend, and just six working days before the close of fact discovery—Plaintiff Bond Pharmacy, Inc. ("AIS") emailed a purported notice of deposition for Ms. Gail Boudreaux, the President and CEO of non-party Elevance Health, Inc. ("Elevance Health"). This eleventh-hour notice was the first time AIS had ever expressed any interest in deposing Ms. Boudreaux, and for good reason. Ms. Boudreaux is the highest-ranking employee of non-party Elevance Health, the ultimate parent of Defendant Anthem Health Plans of Virginia, Inc. ("Anthem"), among other Anthem subsidiaries. Elevance Health is not a party to this action, did not contract with AIS, and its CEO has no unique relevant knowledge about anything to do with this case. This is, of course, not surprising given that AIS is a provider that cared for only a tiny fraction (fewer than 2,000 members) of Anthem's 3.3 million member population and an even tinier fraction of Elevance Health's more than 47 million member population nationwide.

Ms. Boudreaux's only arguable connection to this matter is one that AIS itself manufactured when it directed individuals to send irrelevant, after-the-fact letters to Ms. Boudreaux's attention after AIS improperly terminated its contracts with Anthem. AIS instructed patients and physicians to send Ms. Boudreaux form advocacy letters which AIS drafted, and which Ms. Boudreaux immediately forwarded to the appropriate person for handling. These letters have no relevance to this contract-based lawsuit in which AIS seeks payment on claims that Anthem denied for myriad reasons, and in which Anthem seeks damages for AIS's improper termination of the contracts. Indeed, AIS already deposed five (5) different individuals in this matter, including Anthem's corporate representative, and it did not ask any of those witnesses any questions about these letters.

Beyond these facially evident relevance deficiencies, AIS's efforts to compel the CEO of a non-party corporation to sit for deposition by emailing notice to a party's counsel is improper and unenforceable. Fed. R. Civ. P. 45 provides the proper procedure for a party to compel a non-party witness like Ms. Boudreaux to attend a deposition. AIS has made no effort to comply with this rule either before sending its initial notice, or after Anthem pointed out the deficiencies of these efforts. Moreover, AIS's purported deposition notice is untimely because it fails to give reasonable notice and no dates are available for a deposition prior to the close of discovery. These procedural problems alone justify granting this Motion. The Court should quash AIS's purported deposition notice to Ms. Boudreaux.

## FACTUAL AND PROCEDURAL BACKGROUND

AIS sued Anthem in November 2022, seeking payment for health benefits claims AIS alleges Anthem erroneously denied. AIS never sued Elevance Health or any of its officers, nor could it. AIS had no contract with Elevance Health. Anthem answered AIS's Complaint, showing not only that the parties' Provider Agreement expressly barred AIS's claims, but also that Anthem properly denied the claims for other reasons, including AIS's failure to timely file the claims or to provide necessary information to process the claims appropriately.

Discovery, including depositions, proceeded under multiple Scheduling Orders, including the initial March 10, 2023, Rule 16(b) Scheduling Order (the "March Order") this Court entered. ECF No. 29. The March Order required "[a]ll discovery [to] be concluded by July 14, 2023". This date was extended on two different occasions, both by an unopposed motion by AIS and a joint motion by the Parties. ECF No. 38; No. 40, No. 59, No. 62. Among other changes, the final Scheduling Order required all deposition notices be issued by September 1, 2023, for completion no later than September 12. *Id.* at 2.

On July 14, 2023, AIS served a Rule 30(b)(6) corporate deposition notice on Anthem, listing 28 topics. Anthem identified Leah Timmerman, Vice President for Enterprise National Contracting, as its corporate representative. AIS then noticed the deposition of Ms. Timmerman in her individual capacity, and six (6) other former or current Anthem or Elevance Health employees.[1] After Anthem noticed four depositions (one corporate deposition and three individuals), the parties agreed to the following deposition schedule to ensure all depositions would be completed prior to the close of discovery in this matter:

| Name | Date |
| --- | --- |
| Patricia Sobecki (Anthem) | August 22, 2023 |
| Scott Kovacs (Anthem) | August 23, 2023 |
| Paige Henning (Anthem) | August 24, 2023 |
| Leah Timmerman (Anthem) <br> *Also Anthem's corporate representative. | August 30, 2023 |
| Beverly Aborne <br> *Also AIS's corporate representative. | August 31, 2023 |
| Health Law Partners <br> * Third-party deponent noticed solely by AIS. | September 1, 2023 |
| Lorrie Cahoon (Anthem) | September 6, 2023 |
| Simon Castellanos <br> *Also AIS's corporate representative. | September 7, 2023 |
| Blaine Forshage (AIS) | September 8, 2023 |
| Kayla Fregine (Anthem)[2] | September 11, 2023 |
| Thomas Golias (Anthem) | September 12, 2023 |

During these discussions, AIS never mentioned any purported need to depose Ms. Boudreaux. Having agreed to the above schedule, AIS instead waited until the literal eleventh hour on the deposition notice deadline set by the Court's final Scheduling Order. At 11:15 p.m. on the last day to notice depositions, and the Friday before Labor Day weekend, AIS emailed a purported notice of deposition (*not* a subpoena) for Ms. Boudreaux. **Exhibit A** (Email from A. Pavone with

---

[1] While some of these individuals are technically employed by Elevance Health or another subsidiary, not Anthem, they had significant direct involvement with AIS. Therefore, Anthem chose to waive Fed. R. Civ. P. 45's subpoena requirement for these particular individuals.

[2] On Friday, September 8, at 1:02 p.m., AIS notified Anthem that it was canceling Ms. Fregine's deposition the following Monday. AIS did not give a reason for this decision or the late notice.

Notice of Deposition for G. Boudreaux). Anthem objected to the notice as late and procedurally improper, not to mention as being baseless because Ms. Boudreaux possessed no relevant knowledge of any fact. Anthem also pointed out the notice was procedurally improper even if Ms. Boudreaux has relevant knowledge, which she does not. **Exhibit B** (Email correspondence between C. Stein and P. Werner).

AIS unsuccessfully tried to justify its action by citing three documents and claiming Ms. Henning testified Ms. Boudreaux was informed of and involved in the contract negotiations. However, none of the justifications put forth by AIS hold water, as subsequently pointed out by Anthem. **Exhibit C** (Sept. 6, 2023 Letter from M. Lacy to P. Werner). Indeed, Ms. Henning's deposition contains ***no*** references whatsoever to Ms. Boudreaux. *Id.* Anthem again pointed out the notice was procedurally improper and that the documents on which AIS purported to rely did not establish that Ms. Boudreaux has any relevant knowledge, much less knowledge that AIS could not have obtained in a less burdensome way, such as from Anthem's corporate representative or one of the other six (6) deponents AIS had already deposed or would depose pursuant to the agreed upon deposition schedule. *Id.* To this day, AIS has not provided any further basis establishing Ms. Boudreaux's unique knowledge relevant to this case.[3] **Exhibit D** (Sept. 6, 2023 Letter from P. Werner to M. Lacy). The parties met and conferred by Zoom on September 11, 2023. AIS did not withdraw its notice of deposition. AIS's unreasonable insistence on deposing Ms. Boudreaux despite her lack of relevant knowledge and the other numerous procedural failings forced Anthem to file this Motion.

---

[3] Oddly, AIS asserts in its September 6, 4:31 p.m. letter that "the fact that some of AIS's patients contacted Ms. Boudreaux (after this litigation had commenced) . . . is not something we raised in our earlier communication," claiming that it was somehow a new basis for deposing Ms. Boudreaux. However, AIS's September 5, 2:04 p.m. email alleged "patient complaints involving the agreement terminations (and also based on documents produced by Anthem, ANTM-00058024; ANTM-00058202," and Anthem's response letter, sent the morning of September 6, simply and squarely responded to those allegations.

## ARGUMENT

I. **THE COURT SHOULD QUASH AIS'S DEPOSITION NOTICE BECAUSE IT IS SUBSTANTIVELY IMPROPER AND INTERPOSED SOLELY FOR PURPOSES OF HARASSMENT.**

    A. **AIS has not and cannot justify deposing Ms. Boudreaux, an apex executive of a non-party.**

Although Rule 26(b) allows for liberal discovery, it is not unlimited. One of those limits is the well-established apex doctrine, a rule that discovery "does not necessarily bestow upon a party the right to have his or her attorney depose a highly ranked corporate executive." *Performance Sales & Mktg. LLC v. Lowe's Cos.*, No. 5:07-CV-00140-RLV-DLH, 2012 WL 4061680, at *3 (W.D.N.C. Sep. 14, 2012) (adopting and applying the apex doctrine, which is "rooted in Federal Rule of Civil Procedure 26"); *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-00066, 2020 WL 2311668, at *2 (W.D. Va. May 8, 2020) (same). Quite to the contrary, courts regularly apply a "rebuttable presumption that the deposition of a high-ranking executive either violates Rule 26(b)(2)(C)'s proportionality standard or, on a party's motion for a protective order, constitutes 'good cause' for such an order as an 'annoyance' or 'undue burden' within the meaning of Rule 26(c)(1)." *Performance Sales & Mktg. LLC*, 2012 WL 4061680, at *4. Indeed, there is a "rebuttable presumption that the deposition of a high-ranking corporate executive . . . violates Rule 26(b)(2)(C)'s proportionality standard" and "constitutes 'good cause' for [a protective order] as an 'annoyance' or 'undue burden' within the meaning of Rule 26(c)(1)." *Kendrick v. Carter Bank & Trust*, No. 4:19-cv-00047, 2023 WL 3550112, at *4 (W.D. Va. May 18, 2023) (applying apex doctrine and affirming magistrate's protective order quashing deposition of apex executive); *Performance Sales & Mktg. LLC*, 2012 WL 4061680, at *4 (W.D.N.C. Sep. 14, 2012) (holding that a party's request to depose employees at "the very apex of Lowe's corporate structure" was unduly burdensome and unwarranted).

Pursuant to the apex doctrine, before AIS may depose an apex officer like Ms. Boudreaux, it must show that "(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining [that] information have been exhausted." *Id.*; *JTH Tax, Inc. v. Aime*, No. 2:16CV279, 2016 WL 9223926, at *5 (E.D. Va. Dec. 13, 2016) (holding a company's President and CEO may be deposed despite the apex doctrine because he had "unique" and "distinct" knowledge of the prevalent facts and all "other less burdensome avenues for obtaining the information sought [were already] exhausted"). AIS cannot overcome the rebuttable presumption that its request to depose Gail Boudreaux is impermissible under the apex doctrine because: (1) Ms. Boudreaux does not have "unique or special knowledge" of the facts at issue to justify her deposition; and, (2) AIS has neither pursued nor exhausted other less burdensome avenues for obtaining the same information.

### i. Ms. Boudreaux has no unique or special knowledge.

Ms. Boudreaux has no unique knowledge that could justify her deposition in this matter. Under the apex doctrine, a senior executive of a company is considered to have "unique or special knowledge" of the facts at issue when he or she has far more than a "general awareness" of a topic that "stand[s] alone in comparison to others." *See RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-00066, 2020 WL 2311668 at *3 (W.D. Va. May 8, 2020) (citing *Reese v. United States,* No. 1:12-cr-337, 2017 WL 3016822, at *7 (M.D.N.C. July 14, 2017)) (finding that knowledge held by a senior executive was not "unique" when that knowledge was also held by other employees of the company).

In *Performance Sales & Mktg. LLC,* this Court faced a similar dispute in which Lowe's Companies ("Lowe's") sought relief from a magistrate's order permitting the depositions of its apex officers, including its CEO. *Id.* at *1. Upon review, this Court found that the deposition

requests were abusive, unduly burdensome, and unwarranted because plaintiffs failed to provide any evidence the executives had unique and personal knowledge of the facts at issue. *Id.* at *10. *See also RLI Ins. Co.,* 2020 WL 2311668 at *3 (granting protective order preventing deposition of Chief Operating Officer because he did not possess "unique or special knowledge" of facts at issue in the case). AIS's request to depose Ms. Boudreaux is on all fours with the deposition denials in both *Performance Sales & Mktg. LLC* and *RLI Ins. Co.* because AIS fails to point to *any* evidence that justifies Ms. Boudreaux's deposition.

AIS claims three bases for deposing Ms. Boudreaux, all of which fail under the law and facts: (1) one email thread, ANTM_00018663, referring generally to "the CEO's concern about provider payments related to AIS," which AIS claims "confirms her direct involvement in such matters," *see* Ex. B at 1; (2) two documents, ANTM_00058024 and ANTM_00058202, and a general "understand[ing] . . . that the CEO was informed of . . . patient complaints involving the agreement terminations," *id.*; and, (3) alleged deposition testimony from Paige Henning "that the CEO was informed of an involved in the contract negotiations," *id.* None of AIS's contentions is true. However, even if they were true, these claims at best show Ms. Boudreaux has information "only remotely relevant to the issues of the case," adding to the unreasonableness of the notice. *Folwell v. Hernandez*, 210 F.R.D. 169, 174 (M.D.N.C. 2002).

First, ANTM_00018663, attached as **Exhibit E**, does not establish that Ms. Boudreaux is concerned about payments to AIS. Ms. Boudreaux is not even included on the email thread; she is only mentioned briefly in the root email as being "concerned about provider advances," a general concern that is not specific to AIS. The rest of the email thread does not mention Ms. Boudreaux, nor does it forward any information to her. Indeed, the only mention of AIS is that AIS sent a demand email for payment but did *not* request an advance. In other words, AIS did *not* fall into

the category of providers about which Ms. Boudreaux was generally concerned according to this email. Indeed, it makes perfect sense that Ms. Boudreaux was not focused at all on AIS. As President and CEO of Elevance Health, Ms. Boudreaux oversees the parent company for over a dozen health benefits plans, each of which coordinates with hundreds of providers servicing *millions* of members. AIS, by contrast, served fewer than 2,000 members across all Elevance Health subsidiaries.

Second, AIS claims that Ms. Boudreaux has knowledge about patient complaints following AIS's termination of its provider agreement in 2023. But this knowledge is not unique to Ms. Boudreaux and, in any event, was manufactured by AIS. After AIS improperly terminated its provider agreements, it fomented a letter writing campaign among a few dozen members who *AIS directed* to send form letters addressed to Ms. Boudreaux's attention advocating for AIS to stay in-network (despite AIS having voluntarily chosen to leave Anthem's network itself, by virtue of its terminations). *See* **Exhibit F** (ANTM_00058202) at ANTM_00058205 ("AIS Healthcare has shared Gail's info"). Ms. Boudreaux simply forwarded these emails to an assistant so the assistant could send them to the "contracting team," since it "appears to be a contract dispute issue." *Id.* at ANTM_00058205–06. Her email does not indicate *any* knowledge of what AIS is; rather, the email actually shows her lack of knowledge about the relationship, history, and then-ongoing litigation between Anthem and AIS. She is not copied on the later discussions about the termination and response and has no further involvement, apart from being *AIS's* chosen addressee of these letters. Having drafted the letters, and selected Ms. Boudreaux as the recipient, AIS should not now be permitted to use this manufactured evidence as a basis for Ms. Boudreaux's deposition.

Third and finally, AIS's claim that Paige Henning "stated" that Ms. Boudreaux had involvement in the provider agreement negotiations is simply unsupported. The transcript of Ms.

Henning's deposition contains no references to "Gail," "Boudreaux," "CEO," or "President," and Anthem is unaware of any other documents containing such a statement.

In truth, Ms. Boudreaux has no unique personal knowledge of Anthem's relationship with AIS—or of any other Elevance Health subsidiaries' relationship with AIS for that matter. She has only an awareness of the existence of the letters that were sent to her and which she forwarded to her assistant to handle—knowledge which is far less than that of several other individuals Bond has deposed, including Anthem's corporate representative, Leah Timmerman, to whom AIS chose not to even pose questions on this topic. Ms. Boudreaux was not involved in contract negotiations, in the contract's amendments, in any investigations of AIS's billing practices, in AIS's claims for payment, or in this litigation at all. Tellingly, and consistent with this lack of knowledge, neither Anthem *nor even AIS* listed Ms. Boudreaux as a person with knowledge on their Rule 26(a) disclosures or in any interrogatory responses. As articulated by the court in *RLI Ins. Co.,* AIS has the burden under the apex doctrine to show Ms. Boudreaux possesses knowledge **no Anthem employee** has on topics at issue. *Id.* at *3. But AIS has no good faith basis for deposing Ms. Boudreaux, and Ms. Boudreaux should be protected from this harassment.

        ii.        **AIS did not even pursue, much less exhaust, other, less burdensome avenues for obtaining information.**

Even if Ms. Boudreaux possessed special relevant knowledge (which she does not), AIS should still not be able to depose her because it has not exhausted other avenues for obtaining the information it seeks. AIS cannot "overcome the burden imposed by the apex doctrine" when additional depositions of other, less senior employees might "obviate" the need to depose the opposing party's top executive altogether. *See Smithfield Bus. Park, LLC v. SLR Int'l Corp.,* No. 5:12-CV-282-F, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014).

AIS cannot satisfy this prerequisite. First, AIS already chose not to investigate these topics

with Anthem's corporate representative—who, as the Vice President of Enterprise Contracting, was, much more qualified to discuss member letters and Anthem's response thereto. AIS also decided not to address these topics with *any* of the other four employees it has deposed so far. AIS has not made *any* inquiry into other deponents' knowledge of either those letters, issued any requests for production or interrogatories inquiring into Ms. Boudreaux's knowledge, and did not even list her as a person with knowledge relevant to this case. AIS cannot claim in good faith that this deposition is justified due to a lack of alternatives when it pursued none of the available alternatives. *See RLI*, 2020 WL 2311668, at *3 (finding that a party had failed to exhaust less burdensome means when they did not inquire about the topics with others who might have that information).

AIS cannot satisfy its burden, and the Court should quash Ms. Boudreaux's deposition notice.

## II.    AIS'S DEPOSITION NOTICE IS PROCEDURALLY IMPROPER BECAUSE IT IS UNTIMELY AND AIS CANNOT COMPEL A NON-PARTY WITNESS TO ATTEND A DEPOSITION VIA NOTICE; IT MUST SERVE A SUBPOENA.

The Court should grant this Motion for the independent reason that AIS's deposition notice is procedurally improper. Ms. Boudreaux is an employee of Elevance Health, not Anthem. Elevance Health is not a party to this litigation. Because Ms. Boudreaux is an employee of a non-party, AIS cannot use a Fed. R. Civ. P. 30 "notice" to compel Ms. Boudreaux's attendance at a deposition. *See* Local Civ. R. 30(A) (requiring only a "party, or representative of a party . . . to submit to a deposition" "*upon request*") (emphasis added). Rather, a reasonable and properly served Fed. R. Civ. P. 45 subpoena is the correct, and only, vehicle to compel her deposition.

Moreover, Ms. Boudreaux is a resident of Indiana, well outside the subpoena power of this Court. *See* Local Civ. R. 45(G). AIS did not serve any subpoena on her, much less a properly

domesticated out-of-state subpoena—it just emailed a deposition notice to counsel for Anthem mere minutes before midnight on the Friday before Labor Day. Indeed, AIS *still* has not served any such subpoena, despite Anthem notifying AIS of this deficiency and despite the Court's Local rules requiring that "subpoenas compelling attendance at a deposition shall be served not later than eleven (11) days before the date of the deposition," "[e]xcept as otherwise ordered by the Court for good cause shown." *See* Ex. C; Local Civ. R. 45(F).

Finally, AIS's purported deposition notice also does not comply with Local Civ. R. 30(H) and the Court's Scheduling Order. Local Civ. R. 30(H) guarantees a party a minimum of eleven (11) days' notice prior to a deposition, and the Scheduling Order imposes a discovery cutoff date of September 12. AIS's eleventh hour "notice" leaves September 12 as the only possible date for Ms. Boudreaux's deposition. However, AIS has already scheduled another deposition for that date, leaving counsel for Defendant unavailable even if eleven days' notice was reasonable given the demands on someone of Ms. Boudreaux's position, which it is not. *RLI,* 2020 WL 2311668, at *3 *(citing Ike-Ezunagu v. Deco, Inc.,* No. 09cv526, 2010 WL 4822511, at *2 (D. Md. Nov. 22, 2010) (notice given eleven days before the discovery deadline, and after almost thirteen months of discovery, was not reasonable under the circumstances)).

These procedural deficiencies alone support a protective order confirming that Ms. Boudreaux need not appear for any deposition in this matter.

## CONCLUSION

For the foregoing reasons, Anthem respectfully requests that this Court grant its motion for a protective order precluding AIS from deposing Gail Boudreaux.

-11-

| | |
|---|---|
| Date: September 11, 2023 | ANTHEM HEALTH PLANS OF VIRGINIA, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD |

*/s/ Michael E. Lacy*
Michael E. Lacy (VSB No. 48477)
Sarah E. Siu (VSB No. 94716)
TROUTMAN PEPPER HAMILTON SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1326
Facsimile: (804) 697-6061
michael.lacy@troutman.com
sarah.siu@troutman.com

Virginia Bell Flynn (VSB No. 79596)
TROUTMAN PEPPER HAMILTON SANDERS LLP
301 S. College Street, 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1509
Facsimile: (704) 998-4051
virginia.flynn@troutman.com

Callan G. Stein (*pro hac vice*)
TROUTMAN PEPPER HAMILTON SANDERS LLP
125 High Street, 19th Floor
Boston, MA 02110
Telephone: (617) 204-5100
callan.stein@troutman.com

Harry J. Liberman (*pro hac vice forthcoming*)
TROUTMAN PEPPER HAMILTON SANDERS LLP
875 Third Avenue
New York, NY 10022
Telephone: (202) 704-6000
harry.liberman@troutman.com

*Counsel for Defendant*