IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

BOND PHARMACY, INC.,          )
                              )
        Plaintiff,            )
                              )
v.                            )  Civil Action No. 1:22-cv-1343
                              )
ANTHEM HEALTH PLANS OF        )
VIRGINIA, INC.,               )
                              )
        Defendant.            )

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Plaintiff Bond Pharmacy, Inc.'s Motion for Summary Judgment and Defendant Anthem Health Plans of Virginia, Inc.'s Motion for Partial Summary Judgment.

Plaintiff is a private compounding pharmacy that specializes in home infusion therapy ("HIT"). HIT allows for continuous infusion of medication to a patient through a pain pump that is surgically implanted below a patient's skin to administer medication into the spinal column. When the medication is loaded into the pumps, it can sustain patients for weeks or months at a time. However, once the medication starts running low, it needs to be refilled by a medical professional. That refill would typically occur at a physician's office, but Plaintiff also offers the service of having a nurse refill the pump at the patient's home.

In 2020, Plaintiff and Defendant entered into the Provider Agreement for Plaintiff to provide services to Defendant's

1

members. The Provider Agreement was generally the standard form contract that Defendant used for its HIT providers, and it provided Defendant the ability to unilaterally amend the Agreement. Under the Plan Compensation Schedule (PSC) Attachment to the Provider Agreement, Plaintiff was permitted to bill Defendant for three types of claims: drug, nursing, and per diem. The per diem rate is the all-inclusive, fixed payment for infusion therapy services rendered on a single date of service. Per diem(s) are not permitted to be billed when drug(s) are not administered. That per diem rate includes, but is not limited to, professional services to order, prepare, compound, dispense, deliver, administer, or monitor any drug or substance used in HIT; infusion pumps and supplies; IV-based solutions; dressing kits and venous access device; and supplies, supplies related to HIT, and other skilled nursing services performed during an infusion visit.

Under the subheading of pain management therapy, the Agreement lists Code S9328. This Code is for "[HIT], implanted pump pain management infusion, includes administrative services, professional pharmacy services, care coordination, and all necessary supplies and equipment (drugs and nursing visits coded separately), per diem." The Agreement also contains exclusions for certain claims:

> Pharmaceuticals shipped by Provider to a physician's office, hospital, or any setting other than the home or Ambulatory Infusion Suite are not payable under this

2

Agreement. Under this Agreement, it is prohibited for *Provider to render services in a place other than the Home or Ambulatory Infusion Suite. Providing services at any place other than the Home or Ambulatory Infusion Suite may result in termination of the Provider's Agreement.* Therefore, under this Agreement, payments will not be made to Provider on days a member receives services in a physician's office. Services under this Agreement shall be provided in accordance with all applicable laws.

The parties immediately ran into problems with the claims that Plaintiff was billing to Defendant. The crux of these problems stems from an apparent disagreement about the purpose of the Provider Agreement. Plaintiff alleges that it was contracted by Defendant to provide its ongoing care services and drugs to Defendant's members, no matter where the pump was refilled. On the other hand, Defendant claims that it only contracted with Plaintiff for the purpose of having Plaintiff do in-home refills and that Plaintiff had no role when the pump was refilled in a physician's office. As a result of this dispute, Plaintiff was billing Defendant for per diem and drug claims even when the pump was refilled in a physician's office, which Defendant refused to pay.

In April 2021, Defendant proposed an amendment to the Provider Agreement that updated the language regarding per diem claims that would prevent Plaintiff from ever billing for a per diem claim whenever the pump was refilled in a place of service other than the home. Utilizing its only recourse following the unilateral amendment, Plaintiff began the process of terminating the Provider

3

Agreement to object to the amendment. However, Plaintiff and Defendant were ultimately able to agree on a different amendment that went into effect in December 2021. That amendment stated:

> Per Diem Rate is the fixed payment for infusion therapy services rendered on a single date of service. If the drug therapy was refilled or administered in a Place of Service other than Home, no per diems are ever payable for any date associated with the drug therapy. A per diem will not be payable for any date of service when the drug was refilled or administered in Place of Service office, outpatient hospital or any other setting that is not Place of Service Home.
>
> For clarity:
>
> Refill or Administration In-Home:
> - Anthem pays Provider the Per Diem Rate for each day starting with the date that the Provider's nurse fills the pain pump and ending on the last day that the patient receives medication from the pain pump.
> - Anthem pays Provider the Per Visit Rate for the day that the Provider's nurse fills the pain pump.

Furthermore, the amendment updated the exclusion language to be:

> Pharmaceuticals shipped by Provider to a physician's office, hospital, or any setting other than the Home <u>are not</u> payable under this Agreement. Under this Agreement, it is prohibited for ***Provider to render services in a place other than the Home or bill a per diem when the drug was administered in a setting other than Home. Providing services at any place other than the Home may result in termination of Provider's Agreement.*** <u>Therefore, under this Agreement, payments will not be made to Provider on days a member receives services in a physician's office. Services under this Agreement shall be provided in accordance with all applicable laws.</u>

Following this amendment, the parties agreed to work together to encourage more patients to have refills done using Plaintiff's in-home service. However, few patients transitioned to in-home

4

refills, and most continued to have the pumps refilled at their physician's office. Following the amendment, Plaintiff continued to bill Defendant for per diem and drug claims when refills were not done in the home, and Defendant maintained that Plaintiff was not entitled to payment on these claims.

Plaintiff brought this action in November 2022. In March 2023, without any prior notice, Plaintiff terminated the Provider Agreement effective immediately. The letter terminating the Agreement cited Defendant's fraudulent and material misstatements. However, Plaintiff alleges it has continued to provide services to Defendant's members even though the Agreement was terminated.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). This Court finds this case is ripe for summary judgment on certain categories of claims made by Plaintiff.

5

The Court must first determine which state's laws apply to the claims brought by the parties. When a contract includes a choice-of-law provision, it is presumptively valid. Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996). The Provider Agreement here states that the Provider Agreement "shall be governed by and construed in accordance with the laws of the state where Anthem has its primary place of business, unless such state laws are otherwise preempted by federal law." As neither party raises concerns about the validity of the provision, and Defendant has its primary place of business in Virginia, Virginia law applies in evaluating the dispute.

Turning to the alleged breach of contract, the unpaid or underpaid claims submitted by Plaintiff to Defendant can be divided into six overlapping categories: pre-amendment per diem claims, post-amendment per diem claims, drug claims, untimely claims, time-barred claims, and other claims. Plaintiff asserts that Defendant breached the Provider Agreement by not paying Plaintiff for the per diem and drug claims submitted to Defendant. It further opposes Defendant's argument that some of the claims are untimely or time barred. Conversely, Defendant argues that it should receive summary judgment for all categories except for the pre-amendment per diem claims that do not fall into one of the other categories. Defendant contends that those pre-amendment per diem claims should be resolved at trial instead of the summary judgment stage.

First, Plaintiff claims that it is owed for the per diem claims under the Provider Agreement, both before and after the amendment, even when Plaintiff did not refill the pump in the home. The first step in determining whether summary judgment should be granted based on a contract's interpretation is "to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face. If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." World-Wide Rts. Ltd. P'ship v. Combe Inc., 955 F.2d 242, 245 (4th Cir. 1992). However, "when a contract is ambiguous it is necessary to resort to parol evidence to ascertain the intention of the parties. In such cases, if reasonable people could draw different conclusions, the meaning of the contract upon the evidence presented should be submitted to the jury." Online Res. Corp. v. Lawlor, 285 Va. 40, 54 (2013) (citing Greater Richmond Civic Recreation, Inc. v. A.H. Ewing's Sons, Inc., 200 Va. 593, 596 (1959)).

As to the pre-amendment per diem claims, the plain language of the pre-amendment Provider Agreement is ambiguous. While the Agreement allows Plaintiff to bill for per diem claims submitted under Code S9328, the Agreement does not define Code S9328 in such a way that would clearly allow or prohibit Plaintiff to bill the

7

per diem claims when the pump is refilled outside of the home. Moreover, the exclusion provides that "payments will not be made to Provider on days a member receives services in a physician's office." This exclusion does not provide any unambiguous guidance for per diem claims on days when a member is not receiving services in a physician's office. Therefore, it is necessary to analyze parol evidence to evaluate the intention of the parties.

In support of its claim for summary judgement, Plaintiff argues the extrinsic evidence demonstrates the intention of the parties in entering the pre-amendment Provider Agreement was to allow for the payment of per diem claims even when the pump was refilled in a physician's office. Plaintiff contends that the per diem claims are intended to compensate Plaintiff for the cost of daily infusions of medication and ongoing oversight, care, and support services. It claims it would not have been economically feasible to provide care to Defendant's members without the per diem claims, which demonstrates that the intention was to allow per diem claims no matter the location of the refill. Furthermore, Plaintiff provides emails sent between Defendant's employees while negotiating the pre-amendment Provider Agreement where some employees state their belief that billing under Code S9328 allows Plaintiff to bill for per diem claims for any day the pump infuses the drugs in the home setting, no matter who refilled the pump.

8

However, these email exchanges also include other employees of Defendant disagreeing with that notion.

Moreover, Plaintiff argues that the standards published by the National Home Infusion Association (NHIA) are incorporated into the pre-amendment Provider Agreement. Because the NHIA standards allow for per diem claims to be billed under Code S9328 for each day the pump infuses medication, and it does not require any interaction between Plaintiff and the patient, Plaintiff asserts that the per diem claims are proper and should have been paid. To support the argument that the NHIA standards were incorporated into the Provider Agreement, Plaintiff cites the deposition of a former employee of Defendant that noted that Defendant took NHIA guidelines into consideration when negotiating with Plaintiff. Plaintiff also provided emails between Defendant's employees asking for an internal review of NHIA definitions for per diem while the negotiations were underway. Plaintiff contends that this evidence demonstrates the intention of the parties to allow for per diem claims even when the pump was refilled by a physician.

On the other hand, Defendant argues that the parties entered the Provider Agreement for the sole purpose of having Plaintiff conduct in-home refills for Defendant's members, and there was no intention to pay for any of Plaintiff's claims when the refill was conducted in a physician's office. Defendant contends that the

language of the Provider Agreement, such as the claim exclusion for pharmaceuticals shipped by Provider to a physician's office, which is discussed further below, is evidence of this intention.

Furthermore, Defendant argues the NHIA standards are irrelevant for the pre-amendment Provider Agreement. First, the NHIA standards are never referenced in the Provider Agreement. Second, Defendant points to the clause in the Provider Agreement that states that "[t]his Agreement, exhibits, attachments, appendices, and amendments hereto, and the provider manual(s), together with any items incorporated herein by reference, constitute the entire understanding between the parties and supersedes all prior oral or written agreements between them with respect to the matters provided herein." Defendant argues that this incorporation clause proves that the NHIA standards were never incorporated into the Provider Agreement, as the NHIA standards were never referenced in the Agreement, exhibits, attachments, etc. Third, the NHIA standards themselves state that the procedures are voluntary, which is evidence that they are not automatically incorporated into the meaning of Code S9328. Lastly, while Defendant's employees did state that NHIA standards were considered, they stated in their depositions that they did not view the NHIA standards as binding to Defendant.

The Court finds that reasonable people could draw different conclusions concerning the intention of the parties in entering

10

the pre-amendment Provider Agreement. Especially since there appears to be some disagreement between Defendant's own employees as to the intention of Defendant and a question as to the role the NHIA standards play in the Agreement, the question of the parties' intentions is best left to the trier of fact. Therefore, these claims should be submitted to the jury to determine whether Defendant breached the Provider Agreement in failing to pay Plaintiff's pre-amendment per diem claims at issue.

The post-amendment per diem claims are different. The post-amendment Provider Agreement states that "[i]f the drug therapy was refilled or administered in the Place of Service other than Home, no per diems are ever payable for any date associated with the drug therapy." In its exclusions, the Agreement further states that "[u]nder this Agreement, it is prohibited for Provider to render services in a place other than the Home or bill a per diem when the drug was administered in a setting other than Home."

As the plain language of the Agreement is unambiguous on its face, there is no need to evaluate parol evidence. The amended language eliminates the ability to bill for per diems when the drugs are either refilled or administered in a place of service other than the home. While there may be some disagreement over the meaning of "administered" in the Agreement, it is irrelevant to the matter at hand. The disjunctive nature of the provision means that Plaintiff may not receive per diems for any date associated

11

with the drug therapy when the pump was refilled outside of the home, regardless of where any administration took place. Because these post-amendment per diem claims pertain to instances where the drugs were refilled outside of the home, Plaintiff is not entitled to a per diem on these claims. Accordingly, Defendant is entitled to summary judgment on the post-amendment per diem claims.

Next, the parties each argue they should be granted summary judgment on the drug claims billed by Plaintiff to Defendant for the raw powder used in compounding to create the final, compounded drugs. Under the Provider Agreement, Plaintiff was permitted to bill Defendant for various drug claims. However, the pre-amendment Agreement includes an exclusion that "[p]harmaceuticals shipped by Provider to a physician's office, hospital, or any setting other than the home or Ambulatory Infusion Suite are not payable under this Agreement." The post-amendment Agreement contains essentially the same exclusion.

Plaintiff's argument that its drug claims do not fall under the exclusion hinges on a distinction between the raw powder that it uses for the compounding and the final, compounded drugs. Plaintiff takes the stance that the exclusion only applies to the final, compounded drugs that are shipped to a setting outside the home. Instead, Plaintiff has only billed Defendant for the raw powder used in the compounding. Plaintiff contends the raw powder is not a pharmaceutical under the language of the exclusion. It

12

also claims that the powder was not ever shipped to any physician, hospital, etc., as the only thing shipped was the final, compounded drug. Defendant argues that Plaintiff is attempting to make an artificial distinction between drugs and pharmaceuticals, which is not supported by the definition of the words and how they are used interchangeably in the Provider Agreement. According to Defendant, the claims billed for any type of drug or pharmaceutical that results in pharmaceuticals being sent to settings outside of the home should be excluded from payment.

On its face, the language of the Provider Agreement does not clearly define the scope of the drug claims. However, in evaluating both parties' pleadings and the extrinsic evidence attached, it is clear to the Court that the drug claims existed to allow Plaintiff to bill for the raw drug powder and not the final, compounded pharmaceuticals. The per diem claims, not the drug claims, are meant to account for the final, compounded medication and the compounding process. Furthermore, the HIT industry code under which a provider could bill for a final, compounded solution, J7999, does not appear to be applicable to the Provider Agreement.

Despite the scope of the drug claims, Plaintiff is asking the Court to find that the exclusion applies only to the final, compounded pharmaceuticals and not the raw drug powder. In interpreting the language of the exclusion, the Court must consider the effect the interpretation will give to the provision. Virginia

13

law counsels that "[e]ffect should be given to every part of the instrument, if possible, and no part thereof should be discarded as superfluous or meaningless." CNX Gas Co. LLC v. Rasnake, 287 Va. 163, 168 (2014) (internal citations omitted).

Plaintiff's interpretation of the exclusion would make the provision superfluous and meaningless. To find that the exclusion covers only the final, compounded pharmaceuticals would mean the provision was intended to exclude claims that were already not within the scope of the drug claims contemplated by the Provider Agreement. Instead, the only interpretation that would give meaning to the exclusion is to find that it covers the claims for the raw drug powder that ultimately results in a pharmaceutical being shipped to a setting other than the home. It does not matter that the drug powder itself is not shipped, in its raw form, to those locations. As long as the drug powder is used to create the pharmaceutical that is then shipped to one of those locations, it falls under the scope of the exclusion. Accordingly, Defendant should be granted summary judgment concerning the drug claims at issue.

Next, Defendant claims that it did not breach the Provider Agreement by denying certain untimely claims submitted by Plaintiff. For commercial and Medicare claims, Defendant was permitted under the Provider Agreement to refuse payment for claims submitted more than ninety (90) days after the date the health

14

services were rendered. For Medicaid claims, Plaintiff must submit the claims within 365 days from the date the health services were rendered.

Defendant contends that it was justified under the plain language of the Provider Agreement in denying claims that were submitted after the deadlines provided in the Provider Agreement. While Plaintiff does not appear to contest the plain language of the provision, it argues that Defendant waived this provision through its conduct.

"Waiver is the voluntary and intentional abandonment of a known legal right, advantage, or privilege." Chawla v. BurgerBusters, Inc., 255 Va. 616, 622 (1998) (citations omitted). Waiver requires knowledge of the facts basic to the exercise of the right and intent to relinquish the right. Id. at 622-623. That intent will only be implied upon clear and unmistakable proof of the intent to waive such right. Id. at 623. Waiver need not be expressly made, as it may be implied by a party's conduct, acts, or a course of dealing. Woodmen of World Life Ins. Soc. v. Grant, 185 Va. 288, 299 (1946). The burden rests on the party relying on a waiver to prove the elements of such waiver. Utica Mut. Ins. Co. v. Nat. Idem. Co., 210 Va. 769, 773 (1970). While the existence of waiver is typically a question of fact for a jury, if there is no issue of material fact, and a reasonable person could draw only one conclusion from those circumstances, then the existence of

15

waiver is a question of law. See Dave & Buster's, Inc. v. White
Flint Mall, LLLP, 616 F. App'x 552, 560 (4th Cir. 2015).

Furthermore, "[t]he existence of an anti-waiver clause in a
contract is evidence of an intent not to relinquish the rights
under the contract; however, 'it does not necessarily control,'
because, '[l]ike all contractual rights, the rights under the "no
waiver" clause are themselves subject to waiver.'" Bernsen v.
Innovative Legal Mktg., LLC, 885 F. Supp. 2d 830, 833 (E.D. Va.
2012) (quoting Perry Eng'g Co. v. AT&T Comm'cns, Inc., 1993 WL
262261, at *5 (4th Cir. July 13, 1993)). However, the party relying
on the waiver would also need to produce evidence that the other
party intended to waive the anti-waiver clause in addition to the
other provisions. Dave & Buster's, 616 F. App'x. at 559.

Plaintiff and Defendant dispute whether the timeliness
provision of the Provider Agreement was waived by Defendant's
failure to assert the defense in the initial denial of the claims,
as well as Defendant's conduct in how it processed and paid claims
submitted by Plaintiff. However, even if the Court assumes that
Defendant's conduct would be construed by a jury to indicate an
intention to waive the timeliness provision, there is an anti-
waiver clause in the Provider Agreement that Plaintiff must also
overcome. The provision in the Provider Agreement states that
"[n]either the waiver by either of the parties of a breach of any
of the provisions of this Agreement, nor the failure of either of

16

the parties, on one or more occasion, to enforce any of the provisions of this Agreement, shall thereafter be construed as a waiver of any subsequent breach of any of the provisions of this Agreement."

As such, Plaintiff has the burden to provide clear and unmistakable proof that Defendant's conduct demonstrates an intention to waive the anti-waiver clause in the Provider Agreement. Plaintiff fails to provide any evidence in support of this proposition. Neither the failure to assert the timeliness provision on the initial denial of the claims nor working with Plaintiff to process the claims more efficiently indicates any intention by Defendant to waive the anti-waiver provision. Due to Plaintiff's failure to carry its burden, the Court finds that there was no waiver of anti-waiver clause. Thus, Defendant has not waived the timeliness defense, even though it may not have enforced that provision on claims it has already paid. It is within Defendant's right to enforce that provision on the claims at issue in this litigation that were submitted in an untimely manner. Accordingly, Defendant is granted summary judgment on the untimely claims.

Turning to Defendant's argument that some of the claims are time barred, the Provider Agreement states that "neither party shall commence any action at law or equity against the other to recover on any legal or equitable claim arising out of this Agreement more than two (2) years after the events which gave rise

17

to such claim . . . . The deadline for initiating action shall not be tolled by the appeal process, or any other administrative process." Defendant contends that, as Plaintiff filed this action on November 23, 2022, all claims that were denied or underpaid by Defendant prior to November 23, 2020 are contractually time barred. Plaintiff appears to assert that Defendant is estopped from asserting that Plaintiff's claims are time barred due to Defendant's waiver of this provision. In doing so, Plaintiff lumps their argument for waiver of this provision in with the discussion of waiver of the timeliness provision addressed above without distinguishing how the two are different.

The Court fails to see how Defendant waived the provision requiring that an action be brought within two years of the events giving rise to the claims at issue. Such a provision can only be raised after Plaintiff initiates litigation where claims that are allegedly time barred are at issue. Defendant appropriately invokes that provision here. Given that Defendant cannot raise this defense before litigation is commenced, Defendant's conduct or course of dealing at no time indicates an intention to waive this provision. It is also worth noting that Defendant has limited its request for summary judgment to include only the claims that were denied or underpaid prior to November 23, 2020, not claims that were submitted prior to that date and denied or underpaid

18

afterwards. Accordingly, Defendant is entitled to summary judgment on the time-barred claims.

For the last category of the denied claims submitted by Plaintiff to Defendant, Defendant argues it is entitled to summary judgment on "other claims" that bill for codes that are not contemplated by the Provider Agreement. In its response, Plaintiff states that it is not seeking payment for those claims, even though they were included in the sample set during discovery. Accordingly, Defendant is entitled to summary judgment on these claims.

Beyond alleging breach of contract for failure to pay the per diem and drug claims, Plaintiff included counts for anticipatory breach of contract, unjust enrichment, and declaratory judgment in its Complaint. Under Virginia law, an anticipatory breach claim requires a party to the contract to entirely abandon a contract or absolutely refuse to perform it. Bd. of Supervisors of Fairfax Cnty. v. Ecology One, Inc., 219 Va. 29, 33 (1978) (citing Mut. Rsrv. Fund Life Ass'n v. Taylor, 99 Va. 208, 213 (1901)). As demonstrated by Defendant paying certain claims and denying others, the dispute at issue here is over the scope of certain provisions of the Provider Agreement, not the abandonment of the Provider Agreement wholesale by Defendant.

For unjust enrichment, "[t]he existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." CGI Fed. Inc. v. FCi

19

Fed., Inc., 295 Va. 506, 519 (2018) (citing S. Biscuit Co. v. Lloyd, 174 Va. 299, 311 (1940)). Here, the issues at hand concern the interpretation of the language of the Provider Agreement, an express, written contract that concerns the same subject matter as Plaintiff's unjust enrichment claim. As such, there is no need to determine whether a quasi-contract existed between the parties.

As to the declaratory judgment claim, the intent of the declaratory judgment statutes are "to have courts render declaratory judgment which may guide parties in their future conduct in relation to each other, thereby relieving them from the risk of taking undirected action incident to their rights, which action, without direction, would jeopardize their interests." Liberty Mut. Ins. Co. v. Bishop, 211 Va. 414, 421 (1970). Declaratory judgment is not available in instances where a breach of contract has already occurred, and damages have already accrued. AvePoint, Inc. v. Knickerbocker, 475 F. Supp. 3d 483, 488 (E.D. Va. 2020) (citations omitted). Since the Provider Agreement was terminated in March 2023, any potential breach of contract has already occurred, and a declaratory judgment would not guide the parties in their future conduct, as there is no longer a contractual relationship between the parties. Accordingly, summary judgment is granted in favor of Defendant on the anticipatory breach of contract, unjust enrichment, and declaratory judgment counts.

Lastly, Defendant brought a counterclaim for breach of contract due to Plaintiff terminating the Provider Agreement. Plaintiff was permitted to immediately terminate the Provider Agreement if Defendant "commits fraud or makes any material misstatements or omissions on any documents related to this Agreement which it submits to Provider or to a third party." While Defendant did not move for summary judgment on its counterclaim, Plaintiff argues that it should be granted for summary judgment, as its termination was proper under the Provider Agreement because (1) Defendant has not presented any evidence regarding damages suffered from the termination and (2) Defendant made fraudulent and material misstatements.

Regarding damages, "[p]roof of damages is an essential element of a breach of contract claim, and failure to prove that element warrants dismissal of the claim." Sunrise Continuing Care, LLC v. Wright, 277 Va. 148, 156 (2009) (citing Filak v. George, 267 Va. 612, 619-20 (2004)). The party bringing the claim "has the 'burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery.'" Id. (quoting Shepard v. Davis, 265 Va. 108, 125 (2003)). However, Virginia law "distinguishes between nominal and compensatory damages," and it permits "an award of nominal damages in cases where the plaintiff proves that a breach of contract occurred but does not prove

21

compensatory damages . . . ." W. Insulation, LP v. Moore, 316 F. App'x 291, 298 (4th Cir. 2009).

There is little doubt that Defendant fails to provide sufficient evidence to warrant compensatory damages for its counterclaim. Defendant provided a declaration of Leah Timmerman that states that Defendant "incurred damages" due to the termination in the form of costs and expenses relating to member outreach, disruption and interruption of treatments, and lost goodwill with members. While Defendant attached potentially inadmissible documents showing that outreach was made to its members, Defendant has failed to provide the amount of damages with any reasonable certainty. Without more, Defendant is foreclosed from pursuing compensatory damages for its counterclaim. On the other hand, Virginia law still permits Defendant to pursue nominal damages.

Additionally, Plaintiff alleges that the misstatements at issue in the termination of the Provider Agreement involve statements made by Defendant concerning the December 2021 amendment. However, Plaintiff does not identify individual statements it considers to be fraudulent or material misstatements, but it instead broadly references parts of its statement of facts that pertain to the amendment and the subsequent denial of claims. Nonetheless, Plaintiff contends that statements made by Defendant induced Plaintiff into agreeing to the amendment

22

with Defendant and continuing to provide care for Defendant's members, even though Defendant had no intention of paying Plaintiff for the care.

The central issue is whether the statements are fraudulent or material misstatements. These issues, especially as it relates to the materiality of the statements, are typically handled by the trier of fact, and they must only be resolved at the summary judgment stage when reasonable minds cannot differ on the questions. See TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 450 (1976) (finding that the issue of materiality may be characterized as a mixed question of law and fact, which requires a delicate assessment of inferences that is best left to the trier of fact). As the facts must be construed in light most favorable to Defendant, the Court finds that reasonable minds could differ in determining whether the statements made in negotiating the amendment were fraudulent or material misstatements. Accordingly, Plaintiff's request for summary judgment on the counterclaim should be denied, and the claim should be put to the jury to determine if Defendant should be awarded nominal damages on the counterclaim.

In summary, Defendant's motion for partial summary judgment should be granted as it relates to the post-amendment per diem claims, drug claims, untimely claims, time-barred claims, and other claims, as well as the counts for anticipatory breach of

contract, unjust enrichment, and declaratory relief. The pre-amendment per diem claims that were not untimely submitted or time barred and Defendant's counterclaim may proceed to trial to be determined by the jury.

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment should be GRANTED, and Plaintiff's Motion for Summary Judgment should be DENIED.

An appropriate Order shall issue.

_Claude M. Hilton_
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
February 20, 2024

24